# STEPHEN P. SMITH *et al.*

*v.*

# GEORGE SHELDON.

1. SPECIFIC PERFORMANCE—*performance, or offer to perform, in reasonable time—laches.* It is a well settled doctrine that when a party seeks the specific performance of a contract, where time is not made of the essence of the contract, he must perform, or tender performance, within a reasonable time, on the familiar principle that equity will only favor the diligent, and when the party himself has been guilty of *laches,* he can have no assistance in a court of equity.

2. SAME—*rule in respect to time of performance, when the transaction is in the nature of a mortgage or security for the payment of money.* Where the complainant had purchased land under the belief that he was acquiring the title, had taken possession and made valuable improvements, and A, on learning that the title was in the United States, sought to pre-empt the land as against the right of complainant, and threatened to appeal to the department at Washington, in the event the land officers decided adversely to his claim, and thus compelled the complainant to buy his peace, by agreeing to advance the money necessary to acquire the government title, and have the same taken to one H, to be held by the latter until complainant should pay A $1600, when H was to convey to complainant: *Held,* that the transaction partook more of the nature of a mortgage than of a bargain and sale; that, under the circumstances, the complainant was not bound to make haste to perform his contract, and that the other parties ought to be well satisfied if he was required to perform at all, before they be required to surrender the title thus held by them to premises which cost them nothing.

3. TENDER—*when not necessary before suit.* Where a party in possession of land, and having a clear right to pre-empt the same, for the purpose of buying off one who was contesting the right with him, agreed to pay the latter $1600, and, to secure its payment, had the land entered in the name of a third party as trustee, advancing the money necessary to make the entry, the latter to convey to him when the $1600 was paid: *Held,* on bill to compel the trustee to convey the legal title, that a tender before suit was not necessary, and that it was sufficient if the money was brought into court.

4. PARTIES IN CHANCERY. Where the legal title to land was vested in a trustee merely to secure the payment of a certain sum of money to a third person, who took no interest in the land itself: *Held,* on bill by the equitable owner to redeem and compel a conveyance of the legal title to him, that the person whose debt was thus secured was not a necessary party.

5. BILL TO REDEEM AND FOR CONVEYANCE—*recovery in ejectment no bar*
Where the real owner of land procured the legal title to be made to a trus-
tee in trust to secure the payment of money, filed his bill in equity to
redeem and to compel the conveyance of the legal title to him by the trus-
tee, it was *held*, that a prior recovery against him, in ejectment, by the
trustee, did not cut off his equities or bar the relief sought, as his equi-
ties were not available as a defense to the action of ejectment.

WRIT OF ERROR to the Circuit Court of Warren county; the
Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. A. McCOY, for the plaintiffs in error.

Mr. T. G. FROST and Mr. J. M. KIRKPATRICK, for the de-
fendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This cause was before this court at a former term, and is
reported in 44 Ill. 68.   A detailed statement of the facts will
be found in the opinion then delivered.

In the former suit, the bill was to enforce an alleged trust,
and for the payment of money alleged to have been fraudu-
lently obtained.

The court denied the specific relief prayed for, but said, in
regard to the contract between the parties, that defendant in
error, "having purchased and paid for the tax title, and
having made valuable improvements, under the belief that he
was the owner, and having advanced the funds to make the
entry, his equities are clear, and entitle him to relief, upon
payment of the balance of money specified in the agreement;"
and, in accordance with the suggestion of the court as to the
relief to which appellants would be entitled, this bill was
subsequently filed for the specific performance of the contract.
The circuit court decreed relief, and appellants now seek to
reverse the decree, mainly on the ground that appellee was
guilty of unreasonable delay in tendering performance of the
contract and in exhibiting his bill for relief.

Our attention has been directed to that class of cases which hold the well settled doctrine that where a party seeks the specific performance of a contract, where time is not made of the essence of the contract, he must perform, or tender performance, within a reasonable time, on the familiar principle that equity will only favor the diligent; and where the party himself has been guilty of *laches*, he can have no assistance in a court of equity.

Under all the circumstances in evidence, we do not think' that this is a case where appellee was bound to make much haste to perform his contract; indeed appellants ought to be well satisfied if he is required at all to perform it, before they ean be compelled to surrender the title to the land in controversy, which never cost them anything. It was bought and paid for from the government with money advanced by appellee, and neither appellants nor the alleged *cestui que trust*, McCartney, ever had the shadow of an equitable title to it. Appellant Harding disclaims any equitable interest in the land itself, and says that the legal title was taken in his name for the convenience of his client, McCartney, and was so taken by the consent of the parties in interest. This is, doubtless, true. But what interest had McCartney in the land? None whatever. When it was discovered that the title was still in the government, he undertook to pre-empt it, when he knew that appellee was in the open and notorious possession of the land, and had made valuable improvements, under the belief that he was the true owner. Good neighborship would have required him to place no obstacles in the way to prevent appellee from purchasing it when offered for sale by the government. Having filed a pre-emption claim in the land office at Springfield, which had no foundation whatever to rest upon, and by pressing it upon the attention of the land officers, and intimating in case the decision was adverse, he would appeal to the department at Washington, he compelled appellee "to buy his peace" at an exorbitant price.

The evidence discloses this state of facts: that both the appellee and McCartney claimed the right to enter the land; the former, because he had once bought and paid for it an adequate price, under the belief that he had purchased a good title, and had made valuable and lasting improvements thereon; and the latter, because of his pre-emption claim, which he must have known he could not maintain; and the appellee, to compromise the difficulty, and in consideration that McCartney would withdraw his pre-emption claim, agreed to pay the sum of $1600, and that the title should be taken in the name of Harding, and, upon payment of the sum named in the contract, he was to convey the land to appellee.

Technically, the relation of vendor and vendee existed between the parties; but in equity there is no such relation. Neither Harding nor McCartney had any title to sell to the appellee. The title was simply taken in the name of Harding as security for the payment of the amount which appellee had agreed to pay, to compromise the matter, and when that was paid, it was his duty to convey the land to him.

The transaction partakes more of the nature of a mortgage than of a bargain and sale, and creates more nearly the relation of mortgagor and mortgagee than of vendor and vendee.

Whatever may be the exact definition of the relation between the parties, nothing appears in this record that would bar appellee from obtaining the relief sought. It was said by this court, in its former opinion, that "we are at a loss to see how a case presenting stronger equities could well occur," if appellee should pay the balance of the money under the contract, and we are still of the same opinion.

No unreasonable time elapsed, after that opinion was filed, before appellee commenced this suit. The amount due under the contract has been paid into court for the benefit of the party entitled to it. It is not indispensable to the relief sought that the money should have been tendered before the bill was filed. It is sufficient if the money is brought into court.

We do not think the equities of the appellee are barred or cut off by reason of the judgment in ejectment, in 1868, in the United States Court. He had no complete remedy in that action at law, and can not be charged with *laches* in failing to set up the right of relief now sought, as a defense to that action. His equitable title could not prevail against the legal title.

In the view that we have taken of the meaning of the contract between the parties, McCartney was not a necessary party to the bill. He had no interest in the land itself, and never had. His interest only attached to the money that the appellee agreed to pay to settle the controversy. It is conceded that the legal title was placed in Harding, to be by him conveyed when the money should be paid. No relief, therefore, was necessary as to McCartney, and he need not have been made a party.

The decree was strictly in accordance with the views of the court in its former opinion, and must be affirmed.

*Decree affirmed.*