Syllabus.

# A. MOSELY NILES *et al.*

*v.*

# JACOB HARMON *et al.*

1. MORTGAGE—*foreclosure—order of sale in case of subsequent grants by mortgagor.* On the foreclosure of a mortgage as against subsequent grantees of the mortgagor of different portions of the mortgaged premises, the general rule in equity is, that the granted portions shall be sold in the inverse order of their alienation, so that the land of the last grantee is first subject to sale.

2. SAME—*foreclosure when mortgagor sells part.* Where the owner of mortgaged land conveys a part of it with warranty, it is his duty to protect the grantee against the mortgage, and upon foreclosure of the mortgage, it should first be satisfied out of the portion of the land remaining in the mortgagor. And should the mortgagor convey the portion remaining in him to a second purchaser, he takes the land as it was in the hands of the mortgagor, primarily charged with the payment of the mortgage debt.

3. Where the mortgagor sells a part of the mortgaged premises, taking notes and mortgage on the same from the purchaser, which remain unpaid, and afterward conveys the balance to other parties, on foreclosure of the original mortgage, and on cross-bill to foreclose the second one, where the notes secured thereby have not been transferred, it seems that the land first conveyed should first be charged to the extent of the sum due thereon by the purchaser, and sold, and the proceeds of sale applied in extinguishment of both mortgages. But where the notes of the first purchaser have been transferred before maturity, the purchase money will be treated as paid, and the portions last alienated must first be sold to satisfy the original mortgage.

4. VENDOR AND PURCHASER—*liability of grantor for failure of title.* The grantor of lands, where the conveyance contains no covenants of title, and no fraud is shown, is not responsible for the failure of title to any particular tract conveyed.

5. SETTLEMENT OF ACCOUNTS. Where a third party computed and stated the accounts of two parties, they being present, making their statements and suggestions as to the items to be allowed or not, and struck a balance, and the party charged with the balance afterwards admitted its correctness, and never claimed there was any error in the settlement, in the absence of proof to impeach the settlement, it must be taken as binding upon the parties.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. NATHANIEL J. PILLSBURY, Judge, presiding.

Mr. G. S. Eldridge, for the plaintiffs in error.

Messrs. Doyle & King, for the defendant in error D. H. Virden.

Messrs. Holland & Ayres, for the defendant in error Smith Frame.

Messrs. Blades, Kay & Evans, for the defendant in error Harmon.

Mr. M. B. Wright, for the defendant in error Kussell

Mr. Justice Sheldon delivered the opinion of the Court:

In 1866, one Smith Frame was the owner of section 23, and the north-west quarter of section 25, all in town 25 N., range 10 E., in Iroquois county, and during the year conveyed the same to David H. Virden, taking a mortgage thereon back from Virden to secure the payment of the purchase money.

Afterward, Virden conveyed this section and quarter section in different parcels, and at different times, in the following manner, namely:

On July 27, 1868, to Peter Kussell, all that part of said section 23 lying west of the Illinois Central railroad, taking a mortgage back on the land, to secure the payment of the purchase money.

On August 3, 1868, to E. D. Hartshorn, the said north-west quarter of section 25, taking mortgage thereon back to secure the payment of the purchase money.

On September 5, 1868, to A. M. Niles, all that portion of said section 23 lying east of the Illinois Central railroad, taking mortgage back to secure the payment of the purchase money.

On April 28, 1874, Jacob Harmon filed this bill in chancery to foreclose the mortgage given by Peter Kussell to David H. Virden, which was to secure the payment of three promissory notes, from Kussell to Virden, for the purchase money, the last one of which, the only one remaining unpaid, was for $3460, and due March 1, 1870, it having been assigned by

Virden to Harmon. Frame, David H. Virden, Kussel, Hartshorn, Niles, and Anderson Virden, administrator of Stratton Virden, deceased, were made parties defendant—the notes of Hartshorn and Niles, which their mortgages were given to secure, having been assigned to Stratton Virden in his lifetime.

To the bill of Harmon, all of the defendants answered, except Niles and Hartshorn, the plaintiffs in error, who failed to answer, and the bill and cross-bills were taken as confessed against them. The several defendants who answered filed cross-bills, and the three Frame, Hartshorn and Niles mortgages were asked to be foreclosed. Harmon, Kussell and David H. Virden insisted that the lands last sold to Hartshorn and Niles should be first subjected to the payment of the Frame mortgage, before the land first sold to Kussell. Anderson Virden, the holder of the two notes secured by the Hartshorn and Niles mortgages, insisted, by his answer and cross-bill, that the land sold to Kussell should be first subjected to the payment of the Frame mortgage, before the lands sold to Hartshorn and Niles.

The court below, on final hearing, found there to be due on the Frame mortgage, $3632.18; on the Kussell mortgage, which the original bill was filed to foreclose, $4865.18; on the Hartshorn mortgage, $979.88; on the Niles mortgage, $1868.62; that all the lands were liable to pay the amount due on the Frame mortgage, and that they be sold for payment thereof in the following order: First, the land of Niles; next, the land of Hartshorn; and last, the land of Kussell. Niles and Hartshorn bring this writ of error, and make the point that the land of Kussell should have first been sold for the satisfaction of the Frame mortgage.

It is the general rule of equity, in the case of successive grantees of different portions of an entire tract of land upon which is a mortgage before given by the grantor, that, upon foreclosure of the prior mortgage, such granted portions should be sold in the inverse order in which they were granted, so that the land of the last grantee shall be subject to be first sold.

This rule was applied here, by the court below. The question is, whether it was correctly applied, under the facts of this case. Had Kussell have paid the purchase money for his land, there would be no doubt that the general rule should be applied. In that case, it would be a plain injury to Kussel to allow his land to be sold first.

Where the owner of land mortgaged conveys a portion of it with warranty, it is his duty to protect the grantee against the mortgage; and, in foreclosing the mortgage, it is just and right that it should be satisfied, if may be, out of the portion of the land which remains in the mortgagor, and that it should be first charged with the debt. This protects the interest of the purchaser of the part, and makes the mortgagor but pay his own debt out of his own land. It saves such purchaser from loss and injury, and does no harm to any one else. And should the mortgagor convey the portion remaining in him to a second purchaser, he takes the land as it was in the hands of the mortgagor, subject to the equity of being first charged with the payment of the mortgage debt, and it is thus equitable that the portion of the land held by the second purchaser should first be sold for the satisfaction of the debt, before resort is had to the land of the first purchaser. But in this case the first purchaser, Kussell, had not paid the purchase money for the portion of the land he purchased, and had given a mortgage back to secure its payment, the amount found due under which is $4865.18.

It is said by counsel for plaintiffs in error that it is just and equitable that Kussell should pay this sum, and that it should be satisfied out of his land which he mortgaged for its payment; that the amount due under the prior Frame mortgage is only $3632.18; that all the mortgages are being foreclosed in the present proceeding, and it is contended, as being the proper decree, that it should direct that Kussell's, the first purchaser's land, be first sold, and the proceeds be applied as follows: First, to the payment of the amount found to be due upon the Frame mortgage, and directing that such amount so paid be an extinguishment of a like amount of Kussell's mortgage to

400      Niles *et al. v.* Harmon *et al.*      [Sept. T.

Opinion of the Court.

Virden, and the surplus, if any, be applied upon the residue, or in full satisfaction of the Kussell mortgage, so that both mortgages would be thereby extinguished; and should there be anything remaining, it to be paid over to Kussell. That if Kussell's land should not bring an amount sufficient to pay the Frame mortgage, the amount of the sale be applied upon the Frame mortgage, and be a credit to Kussell upon his mortgage. For the deficiency, if any, for the discharge of the Frame mortgage by the sale of Kussell's land, that the lands of Hartshorn and Niles then be successively made liable; that such a decree would do no injury to Kussell, the first purchaser, as it would only be for the payment of his own debt out of his land which he had mortgaged for the payment, and would save Hartshorn and Niles, the second and third purchasers, from loss and injury; that it would be indifferent to Frame, the holder of the Frame mortgage, in what order the lands are sold, as also to David H. Virden, the maker of the Frame mortgage and the grantor of Kussell, Hartshorn and Niles, as all the conveyances by him were with warranty, and he is bound to protect Kussel, Hartshorn and Niles alike, against the Frame mortgage.

It is insisted that this mode of sale would be a most equitable adjustment of all these mortgage interests, and that the reason of the general rule, which requires the land of the last purchaser to be first sold in order to protect the first purchaser against loss and injury, requires that in this case the rule should be reversed, and the land of the first purchaser be first sold, in order to save the second and third purchasers from injury.

This would all be well, and a proper adjustment of equities as between Frame, Virden, Kussell, Hartshorn and Niles, were they alone concerned, and were the Kussell notes in the hands of Virden, untransferred; but these notes of Kussell have been transferred by Virden to Harmon, and it is Harmon that creates the obstacle to the adjustment as thus proposed. It is said, however, that, under the decisions of this court, Harmon, the assignee from Virden of Kussell's mortgage, took the mort-

gage subject to all the equities to which it might be liable in the hands of the mortgagee, Virden, and that Harmon stands in the same, and no better, position, with respect to the mortgage, than Virden, the mortgagee, himself.   Grant this to the full extent, as regards the mortgage; it would be otherwise as respects the personal liability of Kussell upon his notes secured by the mortgage.   These notes were transferred by Virden to Harmon before maturity.   Harmon's title to them, and to their full payment, is unimpeachable.   Kussell must pay them to Harmon, in full.   Any application of the payment of the Frame mortgage upon Kussell's own mortgage, which might be made in the adjustment of the mortgage interests, could not be made upon these notes of Kussell in the hands of Harmon, in so far as respects the personal liability of Kussell upon the notes.   The notes being outstanding in the hands of a *bona fide* purchaser before maturity, places Kussell in the same condition, as respects this question, as if he had paid for his land at the time of the purchase, and there exists the same necessity as there would in the latter case, that, in order to protect him from injury, the lands should be sold in the inverse order of their alienation.   The mode of adjustment suggested by counsel for plaintiffs in error would be an entirely correct one, were Kussell's notes still in the hands of Virden, untransferred.   The proposal made, and contended for as so equitable, entirely overlooks the feature of Kussell's personal liability to Harmon upon his notes.   We think the court below decreed correctly in ordering a sale of the lands in the inverse order of their alienation.

David H. Virden, more especially, makes defense against the Frame mortgage, and claims that there is a much less amount due thereunder than found by the decree.   He claims there has been a failure of title to 80 acres of land which Frame conveyed to him, and which formed a part of the consideration of the notes which the mortgage was given to secure.   We think we may dismiss this claim, with the remark that it does not appear that there is any liability on the part of Frame to respond for the failure of title, it not appearing

26—80th Ill.

402    Niles *et al. v.* Harmon *et al.*    [Sept. T.

Opinion of the Court.

that he gave any covenant for title. The deed itself is not set out. The record states, merely, that a conveyance of the land was introduced in evidence. The abstract of title for the purpose of showing failure of title, which was admitted by consent, shows the deed was a quitclaim deed. Under such a deed, no fraud appearing, there is no responsibility for failure of title.

There had been an adventure in a land speculation between Frame and Virden, which continued through a course of years, wherein Frame advanced to Virden several thousand dollars to invest in lands on joint account, Virden to pay taxes and all expenses, and make sales, and, after a specified number of years, an equal division to be made, Frame first taking out the purchase money advanced.

In the settling up of this land speculation, this Frame mortgage and notes were given, in November, 1865, for some $7000. Payments in money and property were made from time to time, and credited on the notes. At the time of the decree, it is found there was due on the notes and mortgage $3632.18.

In the course of this land dealing, which continued for some eleven years, a voluminous and complicated account arose between these parties; and it is claimed there were mistakes in the settlement of these accounts, the giving of the notes and the credits placed on them. We find ourselves relieved from the necessity of investigating this account, in order to determine upon the correctness of this claim, by the admissions and settlement made by the parties.

The witness Bartram testifies that he computed the accounts between the parties, and the amount due under the notes and mortgage; that Virden was present, and made his statements and suggestions as to items to be allowed or not; that he then, December 25, 1872, found to be due from Virden to Frame $3291.54, and gave Virden a copy of the estimate. Afterward, on August 14, 1873, another meeting was had between this witness, Frame and Virden. In the previous computation, there had been an estimate of an amount which was in a third person's hands, and in the meantime Bartram had writ-

ten to this person to ascertain the precise amount, and found that it had been overestimated some $94, making an error to that amount against Virden in the former computation. The witness, at this last meeting, deducted this $94, and then calculated and found the amount due Frame to be $3308, and there was then written on the back of the mortgage a statement that, on a settlement made that day been Frame and Virden, there was found due to Frame, on the last two notes described in the mortgage, after allowing all credits, $3308, which statement was dated August 14, 1873, and signed by both Frame and Virden. The witness states, however, that Virden said the amount was more than he had calculated, and that he thought there was some mistake, and that witness was acting for Frame.

Mr. Holland testifies that, in March, 1874, Bartram left the last two notes and the mortgage with him, to collect, informing him that Virden would be out in a few days and furnish information in regard to the parties to the suit; that, in May or June, Virden called and talked about the amount due from him to Frame, and read the written statement of the parties, on the back of the mortgage, and found no objection to it; that he had called several times since, and witness had corresponded with him several times; that Virden never claimed to him there was an error; that he said the indorsement on the back of the mortgage was correct, and admitted that amount was due; that, afterwards, Virden told him of the title to the land failing.

We think this deliberate settlement, and these repeated admissions of the amount due under the mortgage, must be taken as the most satisfactory evidence of the sum due; that there is no opposing testimony in the case sufficient to impeach its correctness.

The decree will be affirmed.

*Decree affirmed.*