### RICKER *v.* GREENBAUM.

*(Circuit Court, N. D. Illinois.* 1882.)

1. FORECLOSURE SALE—RIGHTS OF PURCHASERS FROM MORTGAGEOR.
    A party owning land, subject to a mortgage, conveyed a block thereof to a purchaser, who gave the vendor his note for the purchase money, and executed a deed of trust to secure payment of the note, and afterwards, by warranty deed, the owner conveyed to the present plaintiff another block of said lands, the latter not knowing at the time of the existence of the mortgage. In satisfaction of the mortgage debt the decree in the foreclosure suit required the sale of both blocks in the inverse order in which they had been sold, and the amount realized on the sale of the first parcels sold, not being sufficient to pay the mortgage debt, plaintiff was compelled to pay the difference in order to prevent the sale of his block; *Held*, that plaintiff is entitled to be subrogated to the rights of the mortgagee to the extent of such payment, and to have the interests of the owner as holder of the trust deed, and of the holders of the note for the unpaid purchase money,—transferred to them by the original owner with knowledge of the existence of the mortgage,—sold for the purpose of reimbursing plaintiff in the sum paid by him, with interest.

*Melville W. Fuller* and *W. C. Goudy,* for Ricker.

*Rosenthal & Pence,* for Greenbaum & Foreman.

HARLAN, Justice. On the thirtieth day of September, 1870, Samuel J. Walker held the title to certain real estate in the city of Chicago,

known as Packer's subdivision, subject, however, to a mortgage given Powell by conveyance dated April 8, 1869, and recorded May 25, 1869. The present suit relates only to blocks 14 and 16 of that subdivision.

By warranty deed dated July 1, 1872, and recorded December 7, 1872, Walker and wife conveyed to Coolbaugh and Powers' several blocks in Packer's subdivision, including 14 and 16. By quitclaim deed dated February 25, 1873, and recorded April 3, 1873, Coolbaugh and wife, and Powers and wife, re-conveyed to Samuel J. Walker block 14; and by warranty deed dated February 25, 1873, and recorded April 5, 1873, Walker and wife conveyed block 14 to Sherman A. Ricker. The consideration was $15,100, of which $5,100 was paid in cash April 6, 1873, and $10,000 in a note which Ricker subsequently paid off; and, without actual knowledge of the Powell mortgage, commenced, May 6, 1873, building on block 14, erecting thereon a packing-house, at a cost of more than $80,000. These improvements were completed about the last of September, 1873.

For the purposes of the present suit it is only necessary to say, as to block 16, that by warranty deed dated November 25, 1872, and recorded December 2, 1872, Walker and wife conveyed it to John D. Kinney, who, by deed of like date, (November 25, 1872,) conveyed the same property to Rogers, in trust, to secure Kinney's note to Walker for $12,000, payable November 25, 1875, and which was given for the purchase money; that the deed to Rogers was made without notice to him, and was not recorded until October 23, 1873; and that Coolbaugh and wife, and Powers and wife, by quitclaim deed dated February 25, 1874, and recorded April 15, 1874, conveyed block 16 to Samuel J. Walker.

. In satisfaction of the mortgage debt, the decree in the foreclosure suit instituted by Powell required the sale of blocks 16 and 14 in the following order: (1) The north 201 feet of block 16, excepting and reserving therefrom such estate, right, title, and interest therein as Rogers and Greenbaum & Foreman (the holders of the $12,000 note) had in virtue of the trust deed executed by Kinney; (2) the south 100 feet of block 16; (3) block 14; (4) the estate, right, title and interest of Rogers, and of Greenbaum & Foreman, in block 16. That decree has been executed to the extent necessary to satisfy the mortgage debt. The first and second parcels, sold as required by the decree, did not bring the mortgage debt by $9,030.76. That sum Ricker was compelled to pay, and did pay, in order to prevent the sale of block 14. His payment, it is conceded, was without preju-

dice to any right he had to insist upon the estate and interest of Rogers and Greenbaum & Foreman in block 16 being sold before block 14; consequently, without prejudice to any equity, he had to be subrogated, to the extent of such payment, to the rights of the mortgagee, Powell, and to have the interest of Rogers and Greenbaum & Foreman, to the extent of the unpaid purchase money due Walker from Kinney, sold for the purpose of reimbursing Ricker said sum of $9,030.76, with interest. The present suit is an assertion of such right upon the part of Ricker. Counsel, with commendable frankness, concedes that Ricker has the right in this suit to litigate the equities between himself and Greenbaum & Foreman. That concession is no more than, in the opinion of the court, was required by the settled principles of equity.

We have seen that, subject only to the Powell mortgage, Ricker, on the fifth of April, 1873, by the record of the deed from Walker to him, acquired a complete title to block 14; we have also seen that the Powell mortgage also rested upon block 16. *When Ricker's deed was recorded*, Samuel J. Walker, the evidence shows, was the owner of the $12,000 note, and also held the deed of trust executed to secure its payment. Had he continued to be the owner of that note up to the institution of the foreclosure suit, or when the decree of sale therein was passed, it is clear that Ricker would have been entitled in equity to have the sale of block 14 deferred until after the sale of such estate and interest in block 16 as Walker would have had as well in virtue of *his ownership of that note*, as of the lien given on block 16 to secure its payment. This, because Walker had given a warranty deed to Ricker for block 14, and because it would have been inequitable to expose that block to the mortgage claim so long as Walker had any interest covered by the mortgage.

This brings us to the decisive question in this case, viz., whether, under the circumstances established by the proof, Greenbaum & Foreman can, in virtue of their ownership of the $12,000 note, claim, as against Ricker, any more than Walker could had he never parted with the note. They obtained the note from Walker, or from Walker's agent with his approval, in a negotiation not commenced until the latter part of September, 1873, more than five months after the Ricker deed was placed on record. That negotiation does not seem to have been concluded until the twenty-fifth day of February, 1874, the day on which Coolbaugh and wife, and Powers and wife, gave the before-mentioned quitclaim deed to Walker for block 16. There is a serious conflict in the testimony as to whether

Greenbaum & Foreman acquired the note merely as collateral security for certain demands against Walker, or purchased it outright for $9,500; that is, for $2,000 in cash paid to Walker, and $7,500 in an overdue check of Reed's, which Walker had negotiated with them, and for which he was liable. The court is of opinion that the latter view is established by the weight of testimony, and, consequently, that Greenbaum & Foreman must be deemed to have purchased the note, without any right remaining in Walker to redeem it, or the deed of trust which passed with it to the purchaser. But of what facts were Greenbaum & Foreman informed, or of what facts must they be deemed to have had notice when they purchased the note?

The testimony shows, beyond question, that when Walker and Greenbaum & Foreman entered upon negotiations in reference to the $12,000 note, the Powell mortgage was the subject of discussion between them. It is true that Greenbaum, when giving his deposition, said that *he* did not see the deed to Ricker of block 14 until this litigation was commenced; that *he* did not himself examine the record of conveyances of lots or blocks in Packer's subdivision; and that *he* did not remember that he had any information about the situation of block 14. It is also true that he testified in general terms that he did not recollect anything about the Powell mortgage. But he also says: "I did not discuss the title generally with Walker, but only as to the mortgages. We talked about the Powell mortgage; and Walker said that there was a large amount of other property to protect the Powell mortgage. We had our man in the office, an attorney, to examine the abstract or minutes. I don't know whether he examined it from the records or from minutes. I think he had pencil minutes. Walker mentioned a large amount of property as included in the Powell mortgage not sold, so that this property would be clear from the Powell mortgage."

The attorney referred to was not examined as a witness, and it cannot, therefore, be stated with certainty what facts his investigation of the title disclosed. But the presumption should be indulged that he discharged his duty, and that he came into possession of such facts as could be gathered from the public record of conveyances. And notice to him was, under the circumstances, notice to Greenbaum & Foreman. The latter were distinctly informed that block 16 was covered by the Powell mortgage; that other property besides that block was embraced therein; and that some of the property mortgaged had not been sold. An examination of the records upon those

points would have disclosed the fact that block 14 was covered by the mortgage, and that Ricker held a conveyance from Walker, with warranty, recorded long before the negotiations with Walker for the purchase of the $12,000 note. Those facts being thus ascertained,—or if they were not so ascertained, it was because of the carelessness upon the part of Greenbaum & Foreman, or their office attorney,—the court must assume that Greenbaum & Foreman purchased the note with knowledge of (and therefore upon equitable principles subject to) Ricker's rights to have the interest of Walker in block 16 sold for the protection of block 14 from the Powell mortgage. It would be a gross perversion of the Illinois rule requiring the sale of mortgaged premises in the inverse order of their alienation to permit that equitable right to be destroyed by a purchase made under such circumstances. The recorded deed of Ricker should prevail against the subsequently-recorded trust deed. Had Greenbaum & Foreman purchased the note for value, and without any notice of the Powell mortgage other than that constructively furnished by the record of conveyances, or under circumstances which did not put them as men of ordinary prudence upon inquiry as to the right of others holding portions of the mortgaged premises, their position might possibly have been different.

It is not necessary that I should extend this opinion by an examination of the adjudications of the supreme court of Illinois to which attention has been particularly called: *Old* v. *Cummings,* 31 Ill. 188; *Tenney* v. *Hemenway,* 53 Ill. 97; *Colehour* v. *Savings Inst.* 90 Ill. 156; *Niles* v. *Harmon,* 80 Ill. 396; *Silverman* v. *Bullock,* 98 Ill. 11; *Iglehart* v. *Crane,* 42 Ill. 261; and *Baldwin* v. *Sager,* 70 Ill. 503. Nothing which I have said is in conflict with those cases, when carefully examined. Indeed, consistently with the settled principles of equity, as recognized by the supreme court of the state in those and other cases, with which counsel are familiar, I do not perceive how any conclusion could be reached different from that indicated.

Ricker is entitled to the relief asked by him; or a decree may be entered upon the cross-bill of Greenbaum & Foreman for the enforcement of the lien given by the trust deed; the proceeds of sale, however, to be applied first to the repayment to Ricker of the before-mentioned sum advanced by him in satisfaction of a balance due on the mortgage debt, with interest upon the sum so advanced, and his costs in the suit expended. Whatever may remain of the proceeds of the sale will go to Greenbaum & Foreman, as the holders of the

$12,000 note, lessened, of course, by the amount recovered by them on the Orvis note.

It may be that, in the absence of counsel, I have fallen into some errors as to the details of the decree to be entered. What has been said will, however, guide them in the preparation of the proper decree.

NOTE. The decree in the original suit to foreclose the Powell mortgage was affirmed by the supreme court of the United States, after rehearing granted, in *Orvis* v. *Powell*, 98 U. S. 176.

Ricker then applied for leave to file a bill of review, which was then denied; and that action of the circuit court was affirmed in *Ricker* v. *Powell*, 100 U. S. 104.

The sale then took place, and Ricker obtained leave to file and filed his bill of review, which was heard by Justice Harlan.