## Tunis Isbester v. Murphy Mfg. Co.

1. CORPORATIONS—*Power to Enact By-laws Regarding Delinquent Subscribers.*—The directors of a corporation organized under the general incorporation act may prescribe penalties for a failure to pay installments upon shares of stock, but by-laws providing for the forfeiture of delinquent stock must be general, and operate upon all delinquent shareholders alike.

**Bill for an Injunction.**—Appeal from the Circuit Court of St. Clair County; the Hon. BENJAMIN D. BURROUGHS. Judge, presiding. Heard in this court at the August term, 1900. Decree modified and affirmed. Opinion filed March 11, 1901.

**Statement.**—Appellant is a stockholder of the P. H. Murphy Manufacturing Company, a corporation organized under the laws of this State, and holds a certificate of stock for one thousand shares of the capital stock of the company, of the par value of $10 per share; and on the 9th of November 1899, he filed his bill in chancery against appellee, in the Circuit Court of St. Clair County, in which, after setting forth matters having no necessary connection with the case, he alleged that on the 7th of October, 1899, he received by mail a notice from appellee as follows:

"THE P. H. MURPHY MANUFACTURING COMPANY.

EAST ST. LOUIS, ILL., Oct. 5, 1899.

MR. TUNIS ISBESTER, CHICAGO, ILL.

DEAR SIR: This is to notify you that on the 3d day of October, A. D. 1899, the board of directors of the P. H. Murphy Manufacturing Company, at the office of said company, in the city of East St. Louis, in St. Clair county, in the State of Illinois, passed and adopted by a unanimous vote the following resolution, to wit:

'Whereas, it is necessary in order to pay the debts of the P. H. Murphy Manufacturing Company and to carry on the business of this company, that it shall procure moneys and funds; and, whereas, a large number of the shares of the stock of this company are wholly unpaid; and a large number thereof are in part unpaid; and whereas, it is deemed expedient and proper for the purposes aforesaid to call in and require the full payment of all the shares of the stock of this company remaining unpaid;

Therefore, be it resolved by the board of directors of the P. H. Murphy Manufacturing Company:

1.   That the total amount of the shares of stock of this company remaining unpaid be and the same hereby is called in and required to be paid to the treasurer of this company.

2.   That such shares of stock so called in and required to be paid shall be payable in three equal installments of thirty-three and one-third per cent each; that one of said installments shall be payable on the first day of November, A. D. 1899; that the second of said installments shall be payable on the second day of January, A. D. 1900; and the third of said installments shall be payable on the 1st day of July, A. D. 1900.

3.   That all *bona fide* payments actually made to this company on said shares of stock shall be credited on the first of said installments, and only the balance of such installments shall be collected; and if such payment shall exceed the total amount of such installment, then the balance shall be credited on the next of said installments, and so on; so that no stockholder shall be required to pay more than the amount of his or her shares of said stock so remaining unpaid.'

And you are hereby notified that the one thousand (1,000) shares of ten ($10) dollars each of the capital stock of the P. H. Murphy Manufacturing Company which are evidenced by certificate No. forty (40) for said one thousand (1,000) shares of said stock of said company, which you hold, are wholly unpaid; and you are hereby notified that the full amount of said shares so unpaid is so called in and required to be paid to the treasurer of said company in three equal installments as therein stated. And you are hereby further notified that the first installment thereof of three thousand three hundred thirty-three and 33⅓-100 ($3,333.33⅓) dollars will be due from you under said call to the undersigned, the treasurer of said company, on the first day of November, A. D. 1899, at the office of said company in the said city of East St. Louis, Illinois.

And you are hereby notified and requested to so pay said first installment of $3,333.33⅓ to the treasurer of said company at said office on or before the said first day of November, A. D. 1899.

(Signed)       Peter H. Murphy,<br>Treasurer of said Company."

The charges in the bill are stated in the abstract as follows:

" Said bill of complaint further alleges that said certificate of stock held by said Isbester recites upon its face that it is non-assessable; that said Isbester received said certificate of stock for a valuable consideration from a third party who caused said certificate of stock to be issued direct from said corporation to said Isbester, and that said Isbester received said certificate of stock relying upon the said statement in said certificate that it was non-assessable; that although said Isbester has held said certificate of stock since February 20, 1890, said Isbester has never before received any notice from said corporation that said certificate of stock had not been paid in full; that during said period said Isbester received no notices of meetings of stockholders of said company and that no dividends have ever been paid to said Isbester on said certificate of stock.

Said bill of complaint further alleges that said Isbester has good reason to believe, and does believe, and therefore states on information and belief that said certificate of stock has been fully paid up and that said company and its officers and directors sent said notice to said Isbester for the purpose and with the intention of wrongfully forfeiting said Isbester's rights as a stockholder in said company."

The bill prayed for an injunction restraining the manufacturing company, its officers and directors, from forfeiting the rights of appellant as such stockholder, until the termination of certain mandamus proceedings then pending in the Circuit Court of St. Clair County, between appellant and appellee and some of appellee's officers. A temporary injunction was allowed to issue without notice to the manufacturing company. Appellee demurred to the bill and the court sustained the demurrer, dissolved the injunction, and dismissed the bill.

Parker & Pain and R. W. Ropiequet, attorneys for appellant.

Freels & Joyce and Dill & Wilderman, attorneys for appellee.

Mr. Justice Bigelow delivered the opinion of the court.

Six errors are assigned on the record, but they are all substantially embraced in the first error, which challenges

the decree of the court in sustaining appellee's demurrer to appellant's bill and dismissing the bill.

Assuming that the company as between itself and its stockholders could issue stock as fully paid up when in fact nothing had been paid on it, and that when such stock was assigned by the holder of it for value paid to him by an innocent purchaser, the company would be estopped from assessing the stock to the assignee of it, for the amount that ought to have been paid on it but was not in fact paid, or for any other amount, the principal question then left to be inquired into is, do the allegations of the bill make a case within the rule stated, and of which a court of equity should take cognizance? It is not stated in the bill that the orator purchased the stock of any other person or that the certificate was issued in lieu of a certificate theretofore issued to any one; but the statement is, " that said Isbester received said certificate of stock for a valuable consideration from a third party, who caused said certificate of stock to be issued direct from said corporation to said Isbester, and that said Isbester received said certificate of stock relying upon the said statement in said certificate that it was non-assessable." While it is apparent that different meanings may be drawn by different persons from the language used, one that the orator had purchased the stock that was formerly owned by a third party, and that party had procured a new certificate (which contained the word " non-assessable,") to be made direct to the orator, and the other meaning that the " third party " had as agent of the orator procured the issuance of the certificate in its present shape for a valuable consideration, but less than the par value of it, we are unwilling to say that the bill appears to have been drawn with a design to conceal the real facts as to how the certificate came to be issued as "non-assessable;" but there is to us a darkness about the pleading that is not easily dispelled; and applying the well known rule that a pleading must be taken most strongly against the pleader, a conclusion may be drawn that the " third party " was such only in name, and was in fact acting for appellant, and by this device an at-

tempt was made to circumvent the law by having the word " non-assessable " put in the certificate.

Which one of these views is the correct one to be taken, we are not necessarily called upon to determine.

The bill seems to have been framed upon the theory that the directors of the company, by one fell stroke, could forfeit appellant's stock for the non-payment of the assessments, unless they were restrained by injunction from doing so. Such a theory has no basis on which to stand. The power of the board of directors to forfeit the stock of delinquent stockholders for non-payment of their assessments is given by section 7 of the corporation act; and the mode of exercising the power is given in the section in language as follows :

" The directors may, by by-law, prescribe other penalties for a failure to pay the installments that may from time to time become due."

No resolution of the board of directors forfeiting appellant's stock would be of any avail. A by-law is general and operates on all delinquent stockholders alike. Budd v. Multnomah St. Ry. Co., 15 Oregon, 413 (3 Am. State Rep. 169).

There is no allegation in the bill that the board of directors of appellee company have ever adopted any by-law in reference to the forfeiture of the stock of delinquent stockholders as a means of collecting delinquent assessments, and the bill is barren of even a threat that they intend to adopt any.

From anything that we can discover in the bill, the sole purpose of making the call on delinquent stockholders to pay up the delinquencies due on their stock, was to prepare the way to collect the assessments in a court of law.

We are unable to understand how appellant can have any standing in a court of chancery, and since his rights can be fully protected in a court of law, he must, if assailed, go there for protection, as his bill now stands; but since it is possible that sufficient facts exist that have not been set forth in the bill which may entitle appellant to relief of

some kind, the bill should not have been dismissed absolutely, notwithstanding appellant did not ask leave to amend it; and accordingly the decree will be modified by this court, dismissing the bill without prejudice to appellant, and as modified the decree is affirmed. McDowell v. Cochran, 11 Ill. 31; Sheldon v. Harding, 44 Ill. 68; 6 Ency. Pleading and Practice, 994.

Decree modified and affirmed.