# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Lindy Lu LLC v. Illinois Central R.R. Co.*, 2013 IL App (3d) 120337

---

| | |
|---|---|
| Appellate Court Caption | LINDY LU LLC, Plaintiff-Appellant, v. ILLINOIS CENTRAL RAILROAD COMPANY, a Delaware Corporation, and RAILWAY PROPERTY MANAGEMENT, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-12-0337 |
| Filed | February 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action against a railroad alleging, *inter alia*, fraud and breach of contract in connection with plaintiff's purchase of a strip of property along the railroad right-of-way, the trial court properly granted the railroad's motion for summary judgment, since plaintiff only purchased a quitclaim deed, the railroad made no title warranties, plaintiff's use and possession of the property was not challenged, there was no evidence the railroad concealed or fraudulently prevented plaintiff from learning the status of the title, and a quitclaim deed is sufficient to support a contract in the absence of fraud. |
| Decision Under Review | Appeal from the Circuit Court of Marshall County, No. 08-L-1; the Hon. Scott A. Shore, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robert E. Williams (argued), Michael J. O'Rourke, Andrew N. Levine, and Chad W. Riley, all of O'Rourke & Moody, of Chicago, and Patrick J. Murphy, of Lacon, for appellant.

Gregory A. Cerulo, of Quinn, Johnston, Henderson, Pretorius & Cerulo, of Peoria, and Weston W. Marsh (argued), Matthew R. Campobasso, Joseph L. Fogel, and Kellye L. Fabian, all of Freeborn & Peters LLP, of Chicago, for appellees.

Panel

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices Schmidt and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Lindy Lu LLC, along with others who purchased quitclaim deeds from defendants, Illinois Central Railroad Company and Railway Property Management, filed a six-count complaint against defendants, alleging, among other things, breach of contract. Plaintiff and defendants filed cross-motions for summary judgment. Plaintiff also filed a motion for class certification. The trial court granted defendants' motion for summary judgment, denied plaintiff's motion for summary judgment and denied plaintiff's motion for class certification. We affirm.

¶ 2                                    FACTS

¶ 3    Defendant Illinois Central Railroad Company (Illinois Central) was incorporated in 1851. That same year, the legislature gave Illinois Central a large land grant and the ability to use condemnation of private property to build a railroad through the state of Illinois.

¶ 4    In 1852, Illinois Central filed a condemnation petition in the circuit court of Macon County to acquire a strip of land owned by Berry H. Capell. The petition was granted, and Illinois Central paid Capell $400 for the property. In 1856, Illinois Central finished construction of its "Main Line" from Cairo to Galena. A portion of the Main Line ran through and still runs through the property Illinois Central obtained from Capell.

¶ 5    Plaintiff Lindy Lu is a real estate holding company owned by Mark Allen. Allen owns a chain of oil change companies. Allen approached Illinois Central about purchasing property adjoining one of his businesses in Decatur and adjacent to the Main Line railroad. The parcel plaintiff sought to purchase was a portion of the property Illinois Central obtained from Capell in 1852. The parcel was approximately 20 feet wide and 420 feet long.

¶ 6    In October 2001, plaintiff entered into a contract with Illinois Central to pay $8,000 for

the parcel. Illinois Central gave Lindy Lu a quitclaim deed for the property but retained an easement for a signal box and equipment.

¶ 7    Individuals and businesses that purchased property from 1980 to 2005 from Illinois Central and its agent, Railway Property Management, filed a class action complaint against defendants. On September 1, 2010, plaintiffs filed a motion for leave to file a third amended complaint that, among other things, added Lindy Lu LLC as a plaintiff. That motion was granted, and a third amended complaint was filed.

¶ 8    The third amended complaint contained six counts. Count I sought declaratory judgment; count II alleged breach of contract; count III alleged unjust enrichment; count IV alleged fraud; count V alleged fraudulent concealment; and count VI alleged violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2010)).

¶ 9    In October 2011, plaintiff filed a motion for partial summary judgment on the nature of the underlying interest Illinois Central held in the property conveyed to plaintiff. Plaintiff also filed a motion for class certification, seeking to certify the following class: "All individuals, entities, municipalities, state agencies or other governmental entities who paid money to [Illinois Central] for abandoned right-of-way property wherein the property sold was originally acquired by [Illinois Central] or another railroad pursuant to condemnation proceedings." Defendants filed a cross-motion for summary judgment against plaintiff.

¶ 10    Attached to defendants' motion for summary judgment was the discovery deposition of Mark Allen, plaintiff's owner. Allen testified that he has purchased property approximately 30 to 35 times. In 90% of those purchases, he secured title insurance. He did not secure title insurance with respect to the other sales because the amount of money he was spending did not "warrant the expense of title insurance." He did not obtain title insurance for the property he purchased from Illinois Central.

¶ 11    Allen testified that he assumed that Illinois Central owned the subject property in fee simple since Illinois Central gave him a deed to the property. Before he purchased the property, no one ever told him that Illinois Central held fee simple title to the property or that Illinois Central was guaranteeing to provide Lindy Lu a fee simple interest in the property. He admitted that he "made assumptions that obviously were incorrect."

¶ 12    Defendants filed a response to plaintiff's motion for partial summary judgment. Attached thereto was an affidavit from Arthur Spiros, a former agent and manager in Illinois Central's real estate department. Spiros stated that prior to and during plaintiff's transaction, "Illinois Central did not perform any title search or undertake any legal analysis of any of its potential claims to title" in the property for two main reasons. First, "[t]he cost of undertaking hundreds and, perhaps, thousands of such searches and obtaining a multitude of legal opinions regarding title questions was considered to be not worth the expense to the railroad." Second, Illinois Central "did not want the buyers of Illinois Central's interest to rely on any representation made by, or secured on behalf of, Illinois Central relating to ownership rights."

¶ 13    Spiros explained that "the railroad, by giving a quitclaim deed, was releasing its interest, whether or not shown of public record, for long strips of unoccupied land in this state,

thereby removing a cloud on title and making the land commercially marketable, even if in some cases the railroad may have held only an easement for its right of way." Spiros further explained that potential buyers could check the state of the railroad's title, and if they determined that the railroad's interest was less than fee simple, the railroad would adjust the price to take that into account. To the best of Spiros' recollection, "the railroad offered only a quitclaim deed and gave absolutely no assurances, warranties, or guarantees whatsoever regarding its legal title, if any." The individuals responsible for negotiating sales for Illinois Central were given specific instructions that no warranties or promises of legal title would be made.

¶ 14    In February 2012, a hearing was held on the motions filed by plaintiff and defendants. On March 29, 2012, the trial court entered an order as to all pending matters. In that order, the court found that, except for plaintiff's contract action, all of the other actions were barred by the applicable statutes of limitations. With respect to plaintiff's breach of contract action, the court found that Illinois Central provided consideration in its contract with plaintiff by giving plaintiff "color of title" and relinquishing its rights and claims to the property. The court stated that plaintiff "did in fact acquire and enjoy the use and possession of such property from date of purchase forward, which has not been challenged by any other person or entity."

¶ 15    With respect to the allegations of fraud against Illinois Central, the court found that "there is no genuine issue of fact suggesting that defendants either concealed, or fraudulently prevented any named Plaintiff from learning, the status of title." The court further stated: "Each transaction was at arm's length, with each side fully aware of their respective interests; each buyer was made aware by contract of the right to pursue title search services and to make a demand upon seller to cure title defects."

¶ 16    Finally, the court ruled that, although moot, class certification would be inappropriate because the class sought to be certified by plaintiff would be "overborne by matters that would differ among individual claimants." The court granted defendants' motion for summary judgment, denied plaintiff's motion for summary judgment and denied plaintiff's motion for class certification.

¶ 17                                ANALYSIS
¶ 18                          I. Summary Judgment
¶ 19    Plaintiff argues that the trial court erred in granting summary judgment to defendants on plaintiff's breach of contract claim. Plaintiff claims that it is entitled to summary judgment on its breach of contract claim because the quitclaim deed Illinois Central sold to plaintiff did not convey fee simple title.

¶ 20    Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). When parties file cross-motions for summary judgment, they agree that only a question of fact is involved and invite the court to decide the issues based on the record. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 25. We review a trial court's decision to

-4-

grant or deny summary judgment *de novo*. *In re Marriage of Maurice B.H.*, 2012 IL App (1st) 121105, ¶ 17.

¶ 21    In order to state a cause of action for breach of contract, a plaintiff must allege (1) the existence of a valid and enforceable contract; (2) plaintiff's performance of all required contractual conditions; (3) defendant's breach of the terms of the contract; and (4) damages resulting from the breach. *Van Der Molen v. Washington Mutual Finance, Inc.*, 359 Ill. App. 3d 813, 823 (2005). In order to form a valid contract, there must be an offer and acceptance, consideration, and valid and certain contractual terms. *Id.*

¶ 22    Consideration is some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss of responsibility given, suffered or undertaken by the other. *Diederich Insurance Agency, LLC v. Smith*, 2011 IL App (5th) 100048, ¶ 12. A court generally will not examine the adequacy of the consideration; as long as some consideration is given, that is sufficient. *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 93 (1999).

¶ 23    Unlike a warranty deed, in which the grantor makes certain guarantees to the grantee, a quitclaim deed conveys only such title as the grantor has and contains no covenants or warranties whatsoever. *Mount v. Dusing*, 414 Ill. 361, 372-73 (1953). A quitclaim deed for land, without reference to the character of the title, is, in the absence of fraud, sufficient consideration to support a contract. *Sheldon v. Harding*, 44 Ill. 68, 88 (1867). The purchaser of a quitclaim deed may not recover the money he paid or allege a failure of consideration for such a conveyance. *Id.*

¶ 24    Quitclaim deeds are used because the vendor is unwilling to warrant the title, and they are accepted because the grantee is willing to take the hazard of the title and believes it is worth the price he pays. *Id.* Unless the grantor commits fraud on the grantee, the law allows such contracts to be made and will uphold and enforce them. *Id.* In the absence of fraud, the consideration paid for a quitclaim deed of land cannot be recovered even if the grantor has no title to the property. *Niles v. Harmon*, 80 Ill. 396 (1875); *McNeal v. Calkins*, 50 Ill. App. 17 (1892). When a grantee cannot establish fraud in the conveyance of a quitclaim deed, he has no cause of action against the grantor. See *Sheldon*, 44 Ill. at 88.

¶ 25    Here, the contract between plaintiff and Illinois Central required plaintiff to pay Illinois Central $8,000 in exchange for a quitclaim deed to the subject property. Illinois Central performed its obligations under the contract by providing plaintiff with a quitclaim deed to the property. That the quitclaim deed did not convey a fee simple interest to plaintiff does not make Illinois Central guilty of breach of contract or make the contract void for lack of consideration. See *Sheldon*, 44 Ill. at 88.

¶ 26    Thus, the only way that plaintiff can succeed on his breach of contract claim is to prove that Illinois Central committed fraud in connection with the sales transaction. See *Niles*, 80 Ill. 396; *Sheldon*, 44 Ill. 68; *McNeal*, 50 Ill. App. 17. To establish fraud, a plaintiff must prove (1) a false statement or omission of a material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party resulting in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. *Board of Education of City of Chicago v. A, C & S, Inc.*,

131 Ill. 2d 428, 452 (1989). No action for fraud exists where defendants personally made no representations to plaintiff. See *Seefeldt v. Millikin National Bank of Decatur*, 154 Ill. App. 3d 715, 720-21 (1987). Additionally, fraud does not exist where the parties have equal knowledge or the means to obtain equal knowledge. *Id.* at 719. A person may not enter a transaction with his eyes closed to available information and then charge that he has been deceived by another. *Id.*

¶ 27 As the trial court found, there is no evidence of fraud in this case. Plaintiff's owner, Mark Allen, admitted that no one from Illinois Central ever told him that Illinois Central owned a fee simple interest in the subject property. Rather, Allen assumed that to be the case and voluntarily chose not to purchase title insurance for the transaction even though he had done so in most of his previous real estate transactions. Furthermore, Illinois Central's former employee, Arthur Spiros, stated that Illinois Central never determined what interest it had in the subject property and never made any representations to plaintiff about the interest it held.

¶ 28 Because plaintiff failed to establish fraud in the sale of the subject property, plaintiff's breach of contract action must fail. See *Sheldon*, 44 Ill. at 88. Thus, the trial court properly granted summary judgment to defendants.

¶ 29                                    II. Class Certification

¶ 30 Since none of plaintiff's claims survive summary judgment, the question of class certification is moot, and we will not discuss it. See *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 190 (2005).

¶ 31                                    CONCLUSION

¶ 32 The judgment of the trial court of Marshall County is affirmed.

¶ 33 Affirmed.