# JABEZ K. BOTSFORD

*v.*

# ANNA L. WILSON *et al.*

1. COVENANTS — *effect of, in married woman's deed.* Under the statutes in force in 1868, a deed made by a married woman, with covenants of warranty, had no more force or effect to bind her or her heirs than a quitclaim deed. Such a deed would pass whatever title she had in the lands conveyed, but neither she nor her heirs could be liable upon any covenants contained in the deed. This rule was not affected or changed by the married woman's act of 1861.

2. QUITCLAIM DEED — *grantee has no remedy on failure of title except for fraud.* A party accepting a quitclaim deed for land takes the risk of the title, unless some fraud has been practiced upon him, and he cannot recover back the purchase money paid, or resist its payment, if the title fails.

3. FRAUD — *whether representations of title are fraudulent.* Where a party accepted a deed for real estate from a married woman, her husband uniting with her, and she represented that she had a good title, honestly believing she had, and furnished an abstract showing her title, but which showed no fact not appearing upon the records, and she used no means to inspire confidence in her title or to induce the purchase, it was *held,* on failure of the title, that the grantee could not recover back the price paid in a suit against the estate of the married woman.

4. VENDOR AND VENDEE — *right to recover back price paid, in equity, on ground of mistake.* Where land is sold and conveyed without warranty, or by a deed of a married woman, whose warranty is void, under the mistaken belief that the grantor has a title, the real fact being equally unknown to both parties, and where each has equal means of information, and there is no fraud, and the title fails, the grantee can have no relief in equity. It is strictly *damnum absque injuria.*

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

This was a bill in chancery, filed by Jabez K. Botsford against Anna L. Wilson, administratrix of the estate of Marie E. Wilson, deceased, and others, her heirs at law, to recover back the purchase money of certain real estate, the title to which had failed.   The material facts of the case are set forth in the opinion of the court.   Complainant's bill being dismissed, on demurrer, he appealed.

Mr. GRANT GOODRICH, for the appellant.

Mr. MELVILLE W. FULLER, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, exhibited in the circuit court of Cook county, by J. K. Botsford, appellant, against appellees, administratrix and heirs of Marie E. Wilson, deceased.

It appears from the bill that in April, 1868, appellant purchased of Marie E. Wilson, a married woman, certain real estate in the city of Chicago, for the sum of $12,000; the purchase money was paid and a general warranty deed executed by Mrs. Wilson and her husband, and delivered to appellant.

The grantor of Mrs. Wilson derived title to the premises by virtue of an administratrix's sale of the estate of Charles O'Conner, deceased.   Subsequently, and in 1869, Mary O'Conner, Charles R. O'Conner and Ann O'Conner, the heirs at law of Charles O'Conner, deceased, brought an action of ejectment against appellant; on the trial of the action it was shown that at the time of the death of Charles O'Conner his widow was pregnant with a child, and thereafter Ann O'Conner was born, and became an heir to one-third of the estate of her deceased father, Charles O'Conner, and that she was not made a party to the proceedings by which the land of the estate of Charles O'Conner was sold at the administratrix's sale; that the return of the sheriff indorsed on the process issued in the proceedings

to obtain a decree to sell the lands showed no legal service on Charles R. and Mary O'Conner. The three heirs thereupon recovered the premises from appellant. It is also alleged in the bill, that Mrs. Wilson and appellant, in the sale and purchase, acted under a mutual mistake and ignorance in regard to the birth and existence of the posthumous child, nor had either of the parties any knowledge that the return of the sheriff upon the summons issued in the proceedings to sell the premises failed to show a legal service upon Mary and Charles R. O'Conner.

It is also averred that Mrs. Wilson represented that she had the title to the premises which she undertook to sell, and furnished appellant an abstract which showed that the title represented by her came by and through the sale made by the administratrix of Charles O'Conner, deceased.

The bill contains no allegation of fraud, but it is alleged Mrs. Wilson honestly believed she had good title to the premises.

To the bill a general demurrer was filed, which was sustained by the court, and the bill dismissed. The complainant, Botsford, brings the record here, and the question presented is, conceding the allegations of the bill to be true, is appellant entitled to relief against the administratrix and heirs of Mrs. Wilson to recover back the purchase money paid for the premises?

The statute in force at the time Mrs. Wilson conveyed the premises to appellant, and which authorized a married woman to convey her lands, provides that no covenant or warranty, contained in any such deed or conveyance, shall, in any manner, bind or affect such married woman or her heirs, further than to convey from her and her heirs, effectually, her right and interest expressed to be granted or conveyed in such deed or conveyance. Gross' Statutes of 1869, p. 87.

Under this statute, a deed made by a married woman, with covenants of warranty, had no more force or effect to bind her or her heirs than a quitclaim deed; such a deed would pass whatever titles he had in the lands conveyed, but neither she nor her heirs could be liable upon any covenants contained in the deed.

Under the statute, a warranty deed executed by a married woman was but a quitclaim deed.

The act of 1861, to protect married women in their separate property, did not repeal, change or modify the former act in any manner whatever.

In *Strawn* v. *Strawn*, 50 Ill. 34, this court, in passing upon a warranty deed made by a married woman after the act of 1861 was enacted, said, had it been her own land, and her husband had united in a conveyance of it, containing covenants, she could not be held responsible upon them, any further than that they should be held to convey from her and her heirs, her right and interest in the land, and this immunity is not destroyed by the act of 1861.

The deed made by Mrs. Wilson to appellant, although it contains covenants of title and warranty, she at the time being a married woman, can only, as to her and her heirs, be regarded as a quitclaim deed.

Regarding the deed in that light, the question then is, the title conveyed to appellant having failed, can the administratrix of the estate of Mrs. Wilson, or her heirs, be compelled, in a court of equity, to refund the purchase money paid for the premises?

It is true, the bill alleges that Mrs. Wilson claimed to own the title to the premises conveyed; such may, however, be said of almost every case where lands are conveyed by quitclaim deed; it is not usual for a party to convey lands by deed, unless he has some title or claim upon which to predicate a conveyance, and yet it has not been understood that a grantor was to be held to refund the purchase money upon failure of title, unless the deed contained covenants, or unless fraud was used by the grantor.

Kent, in vol. 2, sec. 473, in discussing this question, said, " I apprehend, in sales of land, the technical rule remits the party back to his covenants in his deed; and if there be no ingredient of fraud in the case, and the party has not had the precaution to secure himself by covenants, he has no remedy for his money,

136                BOTSFORD *v.* WILSON *et al.*                [Sept. T.

Opinion of the Court.

even on failure of title. This is the strict English rule, both at law and in equity."

It is alleged in the bill, that Mrs. Wilson, when the sale was made, presented an abstract showing her title to the premises, but it is nowhere pretended that the abstract presented contained any fact not appearing upon the record or that would not be verified upon examination of the record. No means either false or fraudulent were resorted to by Mrs. Wilson to inspire confidence in her title or to induce appellant to purchase.

Mrs. Wilson, no doubt, in good faith, supposed she had the title to the premises, and appellant purchased with the belief that he was acquiring the title; it turned out, after a long and protracted litigation, that they were mistaken.

And while we fully appreciate the fact that it is a great hardship upon appellant to lose the purchase money paid, we cannot overturn the settled law of the country for the purpose of granting him relief.

The real question involved in this record is not an open one in this court. As early as December, 1830, in case of *Snyder* v. *Laframboise*, Breese, 268, it was said that a party who takes a quitclaim deed on the sale of land, runs the risk of the goodness of the title, unless some fraud has been practiced upon him.

This was followed by the case of *Owings* v. *Thompson*, 3 Scam. 502, where the same principle is announced.

In the case of *Slack* v. *McLagan*, 15 Ill. 242, it was held that the doctrine of *caveat emptor* applicable to sales of real estate leaves purchasers to protect themselves by covenants of warranty, except for the frauds of vendors, against which courts of law as well as equity will give relief, by refusing an enforcement of the contract.

In the case of *Stookey* v. *Hughes*, 18 Ill. 55, it was said, in the absence of fraud or warranty, the rule of law is well settled that the purchaser takes the title at his own risk.

In the case of *Sheldon* v. *Harding*, 44 Ill. 68, which was a bill in equity to enforce a trust and to recover money which

had been paid for a conveyance by quitclaim deed, where there was no title, this court said : " There can be no doubt that a quitclaim deed for land, without reference to the character of the title, is, in the absence of fraud, a sufficient consideration to support a contract ; money paid for such a conveyance cannot be recovered back, or a plea of failure of consideration maintained to a note given for such a conveyance. Such deeds are made because the vendor is unwilling to warrant the title, and they are accepted because the grantee is willing to take the hazard of the title, and believes it is worth the price he pays or agrees to pay. And unless fraud is practiced upon the grantee the law permits such contracts to be made, and will uphold and enforce them."

Without referring to adjudications of courts of other States, the long and uniform decisions of this court must be regarded as conclusive upon the question, that where lands are conveyed without covenants, and in the absence of fraud on the part of the grantor, the grantee cannot, in law or equity, recover back the purchase money paid for the premises, upon failure of title. This is the doctrine of the text-books and it is founded upon principles that cannot be assailed or shaken.

Appellant bases his right of recovery in this case upon the ground of mutual mistake of the parties in regard to the title to the property conveyed, and in support of the position that a court of equity will grant relief, we have been referred to Story's Equity Jurisprudence on this head, and particularly to secs. 140 and 141 and the cases there cited.

These sections seem, when examined alone, to sustain the position assumed by appellant, but in sec. 150 the author says : " where the fact is equally unknown to both parties, or where each has equal and adequate means of information, in every such case, if the parties have acted with entire good faith, a court of equity will not interfere." And in sec. 151 he says : " But where each party is equally innocent and there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance,

18—75TH ILL.

whether mutual or unilateral, is treated as laying no foundation for equitable interference. It is strictly *damnum absque injuria.*"

Under the authority here announced, we fail to see any ground for relief in a court of equity.

The case of *Lockridge* v. *Foster*, 4 Scam. 573, cited by appellant, is so unlike the case under consideration in its facts, that it cannot be regarded as an authority. In that case a bill was filed for rescission or specific performance, a warranty deed had been given, and there was also misrepresentation.

The case of *Warner* v. *Helm*, 1 Gilm. 234, cited, rests upon a principle entirely different from the question involved in this case. It is there decided, where land is sold upon execution, to which the defendant has no title, or the title fails, the plaintiff may have the sale set aside and leave the judgment in force, or have a decree against the judgment debtor for the purchase money.

The case of *Allen* v. *Hammond*, 11 Peters, relied upon by appellant, did not involve title to real estate, or any question in regard to a deed, but involved merely a question in regard to sale of personal property.

Appellant has cited other authority in his argument which it will not be necessary to refer to, as, in the view we have taken of the case, the questions involved have been, in principle, settled by our own court. We have given the questions presented a careful consideration, and as it does not appear in the sale of the premises there was either fraud or warranty, the demurrer was properly sustained to the bill.

The judgment must be affirmed.

*Judgment affirmed.*