WESTERN NORTH CAROLINA RAILROAD v. M. S. DEAL.

*Fixtures—Railroad Depots.*

1. A tenant may remove a building erected by him, for the better enjoyment of his trade, while he remains in possession of the land. But if he neglects to avail himself of this right during the term, the nature of the property, and the uses to which it was devoted, as shown in this case, will serve to rebut the presumption of abandonment.
2. The strict rule that a building becomes part of the land is relaxed, where it appears that the same is put up purely for the exercise of a trade, or for the mixed purpose of trade and agriculture, or manufacturing.
3  Where the owner of land verbally consented that the plaintiff company might erect a depot thereon for railroad business, *it was held* that the structure did not become a part of the freehold and the plaintiff had the right to remove it.
   (*Pemberton v. King*, 2 Dev., 376; *Moore v. Valentine*, 77 N. C., 188; cited and approved).

CIVIL ACTION tried at Spring Term, 1884, of CATAWBA Superior Court, before *Shipp, J.*

The defendant railroad company brought this suit to test its right to remove a house built for a depot, the defendant refusing to allow the same, and setting up a claim thereto upon the ground that it was a fixture.

The facts were agreed upon, and are in substance as follows: The defendant company constructed its railroad to the town of

Newton, in the county of Catawba, about the year 1860, and erected near the track at Newton a brick depot, which it continued to use in its business operations until the fall of 1881.

The company took possession of the land where the depot was located, both under its charter and the verbal license of the defendant's ancestor, and continued in possession of the same, until, by an act of assembly directing it, the line of the road was changed so as to approach the town of Newton by a different route. Accordingly, the company moved its iron rails and cross-ties to the new line, about the fall of 1881, and abandoned the use of the former line.

The land on which the depot was erected had in the meantime come into the possession of the defendant—one-half by descent and the other half by purchase; and two years after the abandonment of the old line the defendant entered and took possession of the depot, without plaintiff's permission.

The company claims that the depot is not a fixture, and demanded of the defendant, before this suit was brought, that it be allowed to remove the same a few hundred yards to the side of its track upon the new line, and the defendant refused.

Thereupon the court below adjudged that the plaintiff company have the right to remove the depot, and the defendant appealed.

*Messrs. D. Schenck* and *M. L. McCorkle,* for plaintiff.
*Messrs. Armfield & Armfield* and *G. N. Folk,* for defendant.

MERRIMON, J. The general rule of law is, that buildings and other structures erected on land for the better enjoyment of it, become identified with, part of, and go with the land, and the tenant has no right at any time to remove them. Anciently the law was more strict in respect to making things erected upon, and attached to the land, directly or indirectly, a part of the freehold, than in more modern times. As civilization has advanced, and trade, the mechanic arts, and other industries

have multiplied and increased in development, and correspond-ingly, in their necessities and wants of reasonable convenience, there has been a growing relaxation of the strict rule of law mentioned in their favor.

It is the policy of the law to encourage trade, manufactures, and transportation, by affording them all reasonable facilities. Buildings, fixtures, machinery, and such things, certainly intended and calculated to promote them, are treated, not as part of the land, but distinct from it, belonging to the tenant, to be disposed of or removed at his will and pleasure. Hence if a house, or other structure, is erected upon land only for the exercise of trade or the mixed purpose of trade and agriculture, no matter how it may be attached to it, it belongs to the tenant, and may be removed by him during his term, and in some classes of cases, after it is ended; though the tenant, after his term is over, would, in going back upon the land to get his property, be guilty of a trespass in going on the land, and only in that respect, the property would remain his.

The exceptions to the general rule pointed out above are well settled, and the practical difficulty in any case arises in pointing out when the general rule, or the exception, applies. The exception does not depend upon the character of the structure or thing erected, or whether it is built of one material or another, or whether it be set in the earth or upon it, but whether it is for the purposes of trade or manufacture, and not intended to become identified with and part of the land; this is the test. *Pemberton* v. *King,* 2 Dev., 376; *Moore* v. *Valentine,* 77 N. C., 188; *Olives* v. *Mowe,* 2 Smith's, L. C., 99, and notes; *Van Ness* v. *Packard,* 2 Pet., 137; Taylor on L. and T., §§544, 545, 546; Arch. L. and T., 366.

The defendant's counsel insisted in the argument, that if the plaintiff might have removed the building in controversy while it was in its possession, it certainly would not have the right to do so after it had gone out of possession of the land, and after the lapse of two years.

If the property is to be treated as personalty, and distinct from, and not a part of the land, we see no reason why the plaintiff may not remove it, although it had gone out of possession of the land. The plaintiff might return and get any article of personal property confessedly such. It may do the same as to the house in question, if it be settled that it is not of the land, unless it appears that the plaintiff relinquished its right.

In *Pemberton* v. *King, supra,* the court say "the general rule is, that any erection, even by the tenant, for the better enjoyment of the land, becomes a part of the land, but if it be purely for the exercise of a trade or for the mixed purpose of trade and agriculture, it belongs to the tenant, and may be removed during the term or after its expiration, though in the latter case the tenant will be guilty of a trespass in entering upon the land for that purpose, and in that respect only." The erection may be removed, because it is not in contemplation of law a part of the land, but personalty, and belongs to the tenant, and he may therefore remove it at any time.

There are authorities which decide that the tenant may remove the buildings while he remains in possession of the land, but not after he has yielded possession thereof. These go upon the ground that if the tenant neglects to avail himself of his right within the period of his term, the law presumes that he voluntarily relinquished or abandoned his claim in favor of the landlord, but such presumption cannot arise, where the facts and circumstances, and the nature of the property, and the uses to which it is devoted, combine to rebut such a presumption. If the tenant yields possession and leaves the structure standing, this fact may be evidence that it was not used or intended only for the purpose of trade or manufacture, or of abandonment of it, but it could not change the established character of the property.

The character of the structure, its purpose and the circumstances under which it was erected, the understanding and agreement of the parties at the time the erection was made, must all

8

be considered in determining whether it became a part of the freehold or not.

In this case, the ancestor of the defendant understood that the plaintiff desired to use the land solely for the purposes of a railroad and the erection of structures incident and necessary to it, and to be used in connection with it, only for storing freights and carrying on its business at the station at Newton. He consented to the use of the land and the erection of the building for that purpose. It was plain to him, as it must have been to everybody acquainted with the facts, that the building was to be used for that and no other purpose, and that it was not intended to aid in the enjoyment of freehold, or to be in any way or manner advantageous to the person entitled to the reversion or the inheritance. The nature of the business of the plaintiff, and the uses to which the structure in question was to be devoted, go to show that at the time the road and depot building were constructed, it was not intended or contemplated by the owner of the land or the plaintiff that they should become part of and merged in the freehold, but that it was to be used solely for the purposes of the business and trade of the plaintiff, and to remain or be removed as the interests and fortune of that trade might require.

We think, also, that the presumption did not arise in this case that the plaintiff relinquished or abandoned the house in question to the defendant. The legislature authorized and required the change of the line of the road, and to do this, in the order of things, required an indefinite period of time, dependent upon the extent of the work to be done and many contingent circumstances. It appears that the new depot, rendered necessary by the change, was to be built near by the old one; that the house in question would be useful to the plaintiff in making the required changes; and there was no apparent motive of any kind for an abandonment of the property. There is nothing in the nature or circumstances of the change that can be reasonably construed to create the legal presumption of relinquishment of the right of the plaintiff to remove the building to the defend-

ant; but, on the contrary, the nature of the change of the road, the time required and the manifest usefulness of the building to the plaintiff, operate to prevent the presumption in favor of the defendant. The presumption relied upon does not arise or apply in all cases, and it certainly does not where the nature of the property, the uses to which it is devoted and may be devoted by removal, the indefinite period of time to be occupied in the removal of that and other property devoted to kindred uses, naturally and reasonably point to a different conclusion.

The plaintiff's counsel, on the argument, cited the cases of *Wagner* v. *Railroad*, 22 Ohio State Rep., 563, and *Railroad* v. *Canton Co.*, 30 Md., 347, as bearing directly upon this case. We find them very much in point and cite them with approval.

The house in question was not intended at the time it was built to become part of, or for the benefit of the land on which it was erected. It was erected by the plaintiff with a knowledge and assent of the ancestor of defendant, for the sole purpose of carrying on its business or trade. It is, therefore, personal property. No legal presumption of relinquishment or abandonment of the right to remove it, to the defendant, arises. The plaintiff is, therefore, entitled to have and remove it as it may see fit to do.

There is no error, and the judgment of the superior court must be affirmed.

No error.                                            Affirmed.