E. J. OVERMAN, Executor, v. E. T. SASSER et al.

*Fixtures —Executor —Remainderman —Life-tenant —Relations of Parties—Heirs—Landlord and Tenant—Agricultural Purposes—Freehold.*

1. An engine, cotton-gin and condenser were attached to a mill by the *tenant by the curtesy* after his term commenced, not solely for the better enjoyment of the land, but for the mixed purpose of trade and agriculture: *Held,* they belonged to the executor of the life-tenant as against the remainderman.

2. The executor may remove such fixtures within a reasonable time after the death of the life-tenant.

3. The doctrine of fixtures depends for its application upon the relations of the parties.

4. Between the executor and heirs, whatever is affixed to the freehold becomes a part of it and passes with it.

5. Between the executor of tenant for life and in tail and the remainderman, the right of removing fixtures is more in favor of the executor.

6. Between landlord and tenant, fixtures for the better enjoyment of trade are removable by the tenant, but fixtures for agricultural purposes pass with the land.

This was a controversy without action, submitted to *Brown, J.,* at April Term, 1890, of WAYNE Superior Court.

The plaintiff is executor of the estate of Eli Sasser, Sr., who died in March, 1890, and the defendants are the children of said Eli Sasser by his first wife, Eliza Sasser, who died in 1877, leaving the defendants heirs at law.

About the year 1873, said Eliza Sasser and one Amanda Cassely, wife of T. M. Cassely, became the owners as tenants in common in fee of a certain tract of land in said county, on which is a water-mill power, used for grinding corn, etc., and for ginning and packing cotton, etc., in a mill and gin-house situated on said water-power, on said land.

On the death of said Eliza Sasser, her interest in said landed property descended to the defendants, and her husband, Eli Sasser, became tenant by the courtesy thereof.

Soon after the death of said Eliza Sasser, the said Eli Sasser, Sr., and said T. M. Cassely, purchased a small engine and located it by the side of said mill and gin-house, for the purpose of grinding and ginning as aforesaid by steam power, when the water-power became insufficient, and it was so used. Subsequently, said Eli Sasser, Sr., and said T. M. Cassely disposed of said small engine and purchased a larger engine and boiler—the one in controversy—and placed it at the side of said gin and mill-house for the purpose of grinding grain and ginning cotton from said farm, and for others in the neighborhood. They also placed in said house, for the same purpose a cotton-press, gin and condenser, an anvil and vise and blacksmith tools. The engine is about three feet from the house, with side-timbers bolted to the engine, and these set on cross-timbers in the ground. The inspirator of the engine goes through the floor to the water, and thus the engine is supplied with water for steam, etc. The gin sets on the floor and is held in position by cleats nailed to the floor. The condenser is set

107—28

on top of the gin and nailed to it and to the joists above. The anvil is nailed to the block on which it sets, and the block extends into the ground. The vise is nailed to a bench at the top, which bench is nailed to the house and its posts in the ground. The bellows are supported by posts in the ground, and braced by pieces nailed to the house. The blacksmith tools are loose in the shop.

Said Eli Sasser, Sr., bequeathed all of his interest in said property to his second wife Mary, and others, and the plaintiff, as executor, claims the same, except the cotton-press, and defendants claim said articles as attached to, and descending with, the land of their mother to them.

The value of said articles is more than two hundred dollars.

The Court rendered judgment as follows:

"No point was made as to want of parties, the judgment of the Court being asked only as to whether the property described became fixtures. Upon the argument, counsel abandoned all claim to the anvil, bellows, and blacksmith tools and vise.

"From the facts set forth, the Court concludes that the engine, cotton-gin and condenser were attached to the mill by the tenant by the courtesy, after his term commenced, not solely for the better enjoyment of the land and farm, but for the purpose of milling corn and ginning cotton for the neighborhood, as well as for himself, and for the mixed purpose of trade and agriculture (*R. R.* v. *Deal,* 90 N. C., 110), and that the said engine, gin and condenser did not become fixtures, and did not descend to the defendants with the land.

It is therefore adjudged that the plaintiff recover of the defendants the said engine, gin and condenser, together with the anvil, bellows and blacksmith tools and vise, and the costs.

The defendants excepted to the above judgment, and appealed.

*Mr. C. B. Aycock,* for plaintiff.
*Mr. W. R. Allen,* for defendants.

CLARK, J.: In the great case of *Elwes* v. *Mawe,* 3 East., 38, 2 Smith Ldg. Cases, Lord ELLENBOROUGH holds the doctrine of fixtures to depend largely in its application upon the relations of the parties, which he divides into three classes.

1. Executor and heir. As between them, the common law rule, that whatever is affixed to the freehold becomes a part of it and passes with it (*quic quid plantatur solo, solo cedit*) is observed in full vigor. In this class fall also mortgagor and mortgagee, vendor and vendee, as to whom the strict rule of the common law is still in force. *Foote* v. *Gooch,* 96 N. C., 265.

2. Between executor of tenant for life, or in tail, and the remainderman, in which case the right to fixtures is considered more favorable for the executor.

3. Between landlord and tenant, in which case, in favor of trade, and to encourage industry, the greatest latitude is allowed, so that all fixtures set up for better enjoyment of trade are retained by the tenant, though this does not include fixtures used for agricultural purposes. Where, however, they are used for mixed purposes of trade and agriculture, they are held to belong to the tenant. Williams on Personal Property, 16, *note,* and numerous cases cited.

The reason of the distinction is pointed out by PEARSON, C. J., very succinctly in *Moore* v. *Valentine,* 77 N. C., 188. When additions are made to the land by the owner, whether vendor, mortgagor or ancestor, the purpose is to enhance its value, and to be permanent. With the tenant the additions are made for a temporary purpose, and not with a view of

making them part of the land, hence, for the encouragement of trade, manufacturing, &c., the tenant is allowed to remove what had apparently become affixed to the freehold, if affixed for purposes of trade, and not merely for better enjoyment of the premises. *Pemberton* v. *King*, 2 Dev., 376.

In the present case, it is agreed that "the engine, cotton-gin and condenser were attached to the mill by the tenant by the courtesy after his term commenced, and not solely for the better enjoyment of the land and farm, but for the purpose of milling corn and ginning cotton for the neighborhood, as well as himself, and for the mixed purpose of trade and agriculture."

His Honor properly held that they belonged to the executor of the life tenant as against the remaindermen.. This case comes under the second class mentioned by Lord ELLENBOROUGH, and there are few adjudications on that class, but the ruling of the Court below is sustained by that of Lord HARDWICKE in *Lawton* v. *Lawton*, 3 Atk., 13, and in *Dudley* v. *Wood*, Amb., 113, and the observation of Lord MANSFIELD in *Lawton* v. *Salmon*, 1 H. Bl., 260. There are subsequent cases which all seem to follow the above precedents. Tyler on Fixtures (Ed. 1877), 490, 491, 496, 503.

In our own reports, *Pemberton* v. *King*, 2 Dev., 376; *Feimster* v. *Johnson*, 64 N. C., 259, and *Railroad* v. *Deal*, 90 N. C., 110, which recognized the right of tenant to remove, were cases between tenant and lessor, while *Bryan* v. *Lawrence*, 5 Jones, 337; *Latham* v. *Blakely*, 70 N. C., 368; *Deal* v. *Palmer*, 72 N. C., 582; *Bond* v. *Coke*, 71 N. C , 97; *Foote* v. *Gooch*, 96 N. C., 265, and *Horne* v. *Smith*, 105 N. C., 322, which adjudged the fixtures to have become part of the freehold, all came under Lord ELLENBOROUGH's first class, *supra*.

This is the first instance in which the rule as to fixtures between executor of tenant for life and the remainderman has come before the Courts of this State. It assimilates that, between landlord and tenant, the principal difference, per-

haps, being that the executor can remove such fixtures within a reasonable time after the death of the life tenant, whereas, between landlord and tenant, the tenant cannot go on the premises to remove the fixtures after the termination of his lease without being a trespasser, except in those cases where the duration of his term is not fixed, but uncertain, or where there is an agreement that he may remove after the expiration of the lease.

*Per Curiam.*                                        No error.