STATE v. MARTIN.

(Filed April 24, 1906).

*Malicious Mischief—Elements of Offense—Injury to Electric Cars—Fixtures—Annexation to Land—Intent—Presumptions — Special Instructions — Verdict Against Weight of Evidence—Remedy.*

1. The mere intention to make a chattel a part of the freehold is not by itself sufficient for the purpose of making it so; there must be some kind of physical annexation to the land, though the nature and strength of the union is not material, if it in fact be annexed.

2. Under Revisal, section 3676, an electric street car is personalty so as to render a wilful and wanton injury to it criminal.

3. In order to sustain a conviction at common law for malicious mischief, it must appear that the property was destroyed, and the act must also have been committed with malice towards the owner of the property.

4. Malicious mischief is not committed when the act alleged to be criminal is prompted by sudden resentment of an injury or a supposed affront; nor is the act wilful and wanton when committed under like circumstances.

5. The presumption is that the trial court charged the jury fully and correctly, and that the jury found all the facts necessary to constitute the crime.

6. If a defendant desires a special instruction upon a particular feature of the case, he must ask for it.

7. Where there is some evidence to support the verdict, if the jury decide contrary to its weight, the remedy of the defendant is an application to the judge to set the verdict aside.

8. In an indictment for a misdemeanor there is no error prejudicial to the defendant, by reason of the fact that a person against whom the grand jury returned "not a true bill" was nevertheless put on trial with the defendant.

STATE *v.* MARTIN.

9. The offense of wanton and wilful injury to property under Revisal, section 3676, may be committed jointly by two persons, one doing the act, and the other, as princpal, aiding and abetting him, or participating with him.

10. Though an indictment be returned "not a true bill" as to one of the defendants, testimony competent against both may be used. against the other defendant.

INDICTMENT against Reed Martin, heard by *Judge R. B. Peebles* and a jury, at the February Term, 1906, of the Superior Court of FORSYTH.

The defendant, Reed Martin, was indicted with Henry Revels for wilfully and wantonly injuring an electric street car by breaking its windows with a rock. The grand jury, as appears from the endorsements on the indictment, returned "not a true bill" as to Henry Revels and a "true bill" as to Reed Martin. Both were put on trial.

J. M. Chitty, a witness for the State, testified: "I was motorman of the car the day the two defendants entered it at Fourth street. After going about a block or two, one of the defendants appeared to be intoxicated and was put off the car. One of the defendants, Reed Martin, picked up a rock and threw it. The rock missed the conductor, but broke a glass in the window of the car." There was other testimony on the part of the State which corroborated this witness. The defendants did not introduce any testimony, but requested the court to charge the jury that there was a variance between the allegation in the indictment and the evidence, and that the latter would not sustain a verdict of guilty. This prayer was refused and the defendants excepted. The defendant Revels was acquitted. There was a verdict of guilty as to the defendant Reed Martin, who moved in arrest of judgment. The motion was overruled and he excepted. Judgment was pronounced upon the verdict and the defendant appealed. He assigned the following errors: 1. The refusal of the court to instruct the jury,

141——54

STATE *v.* MARTIN.

as requested, that there was a variance.  2. There was a misjoinder of parties.  3. The offense could not be committed jointly.  4. That testimony competent only against the defendants jointly was admitted and used to convict the defendant Martin, when it appears that the indictment was returned "not a true bill" as to Revels and he was actually acquitted on the trial.

*Robert D. Gilmer, Attorney-General,* for the State.
*J. S. Grogan* for the defendant.

WALKER, J., after stating the case: The learned counsel for the defendant in his argument before us relied chiefly upon the position that the street car was not personal property, and therefore that the alleged offense was not within the language or the meaning of section 3676 of the Revisal. He therefore contended that the judgment should be arrested. It does not appear from the indictment where the car was when it was injured by the defendant, but the evidence shows that it was then being operated on the track of the Fries Power Company in the city of Winston. The defendant's prayer for instructions is, perhaps, sufficient to raise this question, apart from the motion in arrest of judgment, though it does not distinctly point out this as a defect in the evidence and seems to have been intended to apply only to the question of variance.  We will assume that the point is sufficiently presented, as it was clearly intended to be.

The method of changing property, personal in its nature, into realty is well settled in the law.  Such property does not become realty by mere use in connection with the land, for if that were true, implements of husbandry, though used only for agricultural purposes, would thereby become a part of the land.  Whether or not a chattel has become a part of the realty must to a great extent depend upon the facts of the particular case.  The mere intention to make it a part of the

freehold, though it may enter largely into the determination of the question of permanency *(Foote v. Gooch,* 96 N. C., 270), is not, by itself, sufficient for the purpose of making it so. There must be some kind of physical annexation of the thing to the land, though the nature and strength of the union is not material, if, in fact, it be annéxed. The annexation is in some cases by gravitation alone or, in other words, the thing is kept in position by its own weight, as in the case of the planks laid down as the upper floor of a ·gin house and used to spread cotton seed upon, though not nailed or otherwise fastened to the building. *Bryan v. Lawrence,* 50 N. C., 337; *Latham v. Blakely,* 70 N. C., 368. In such a case the planks are necessary for the completion of the structure and essential to its occupation, use and enjoyment for the purpose of the trade or business to which it is adapted and has been appropriated. *Latham v. Blakely, supra; Railroad v. Deal,* 90 N. C., 110. They have, as it were, a permanent and fixed position, and are in a certain sense stationary—not movable, so as to be in one place today and in another tomorrow. "The very idea of a fixture," says the court, in *Beardsley v. Ontario Bank,* 31 Barbour, at p. 630, "is of a thing fixed or attached to something as a permanent appendage, and implies firmness in position. But that which becomes by annexation a part of the soil is something more than a fixture, and requires at least as much permanence as to constitute a fixture. The maxim, *Quicquid plantatur solo, solo cedit,* which tersely expresses the principle, makes the affixing of the chattel to the soil the test by which it is declared to belong to the soil. Hence, courts, in determining the questions that have arisen, have looked at the mode and intention of annexation, the object and customary use of the thing annexed, and in determining the intention, the character of the claimant has had its weight." And again at page 635, the court, in discussing the difference between railroad cars and a loom in a factory, says that the latter are

permanently placed, although not strongly affixed, while rolling stock is incapable of permanence or of being annexed in any one place, as it is intended for, and the whole use is in its locomotive facilities, and the court then proceeds: "The term by which it is ordinarily designated 'rolling stock,' implies the very reverse of annexation and a permanent fixture. It is essential to the successful operation of the railroad, but is not a part of the railroad itself. It is an accessory to the trade and business of the road, and not to the road itself. The road is completed when the bed is graded, the superstructure laid, the rails put down, and everything is ready for the reception of the locomotives and cars; it is equipped when the rolling stock and all other necessary appliances and facilities for business are finished and put upon it for use." That seems to be the leading case in the books. The opinion delivered by *Judge Allen* (afterwards judge of the Court of Appeals) is devoted to a careful discussion of the subject and goes fully into the authorities. It is well considered and has been followed as a controlling precedent in several subsequent cases. A decision by the same court, in which the question is also learnedly and ably treated and the same conclusion reached, is *Stevens v. Railroad,* 31 Barbour, 590. The Court of Appeals of New York has expressly affirmed those cases and approved the principles upon which they were decided. *Randall v. Elwell,* 52 N. Y., 521; *Hoyle v. Railroad,* 54 N. Y., 314. To the same effect are *State Treasurer v. Railroad,* 28 N. J. L., 21, and *Williamson v. Railroad,* 29 N. J. Eq., 311. In the last cited case it is said, at pages 329 and 331, "The criterion for determining whether property ordinarily regarded as personal property becomes annexed to and part of the realty, is the union of three requisites: 1. Actual annexation to the realty or something appurtenant thereto. 2. Application to the use or purpose to which that part of the realty with which it is connected is appropriated. 3. The inten-

tion of the party making the annexation to make a permanent accession to the freehold. Tested by the foregoing criterion, it is manifest that the rolling stock of a railroad must be regarded as chattels which have not lost their distinctive character as personalty by being affixed to and incorporated with the realty. It is true that engines and cars are adapted to move on the track of the railroad, and are necessary to transact the business for which the railroad was designed. But unattached machinery in a factory, the implements of husbandry on a farm, and furniture in a hotel, are similarly adapted for use in the factory, on the farm, or in the hotel, and are equally essential to the profitable prosecution of the business in which they are employed. When regard is had to the fundamental and necessary condition under which the law permits chattels to become a part of the realty, engines and cars and the rolling stock of a railroad utterly fail to answer the requirement of the law." It does not appear in this case that the power company owned the land on which its rails were laid and over which its cars ran. Indeed, it must be that it did not, and this is the fair inference. The only right it had, in respect to the land, was a license to use the streets of the city for the operation of its line of railway. This being so, it had no land of its own to which it could annex its personal property and thereby convert it into realty. Having only a right to use the land for a definite purpose and subject to its joint occupation and use by the city and its citizens, so far as they did not interfere with or obstruct the use by the company, we cannot suppose that either of the parties intended that the nature of the property, that is the cars, should be changed from personalty into that of realty. There is no valid reason for holding that such a change was contemplated or that it was wrought by a mere use of the streets in the manner already described. The cars were in no way actually and physically attached to the realty, nor were they constructively so annexed, the

latter method implying that there exists both adaptation to the enjoyment of the land and localization in use as obvious elements of distinction from mere chattels personal, which are movable and intended to be so.' While there is here an adaptation to use, there is no annexation, no immobility from weight and no localization in use. Were the same contrivance adopted by a tenant for the purpose of carrying on his trade upon leased lands, his right to remove both cars and rails would seem to be beyond question. *Hoyle v. Railroad, supra; Moore v. Valentine,* 77 N. C., 188; *Overman v. Sasser,* 107 N. C., 432; *Elwes v. Mawe,* 3 East., 38 (2 *Smith's Leading Cases,* 9 Ed., 1888, p. 1423). We conclude that the cars were personalty so as to render a wilful and wanton injury to them criminal under section 3676 of the Revisal. But the indictment is not sufficient to sustain a conviction at common law for malicious mischief, as contended by the State. In such a case, it must appear that the property was destroyed, and it will be difficult to find a case where an injury, short of destruction, has been held tc be indictable at common law. The weight of authority both here and in England is decidedly against the proposition that a criminal offense has been committed where there has been mere injury without destruction. *State v. Manuel,* 72 N. C., 201; *State v. Helmes,* 27 N. C., 364; *State v. Robinson,* 20 N. C., 129. The act must also have been committed with malice towards the owner of the property. *State v. Robinson, supra; State v. Landreth,* 4 N. C., 331; *State v. Jackson,* 34 N. C., 329; *State v. Sheets,* 89 N. C., 543. And the indictment must either expressly charge malice against the owner or fully otherwise describe the offense in that particular. *State v. Jackson, supra; State v. Hill,* 79 N. C., 656. The statute (Revisal; sec. 3676), it seems, was passed to change the law in this respect, though not, perhaps, to supersede the common law as to malicious mischief.

There was no variance that we can see with the present record before us. As the charge of the court is not set out, we are unable to know how the judge instructed the jury. We suppose the variance is alleged to consist in the fact that the evidence tended to show that the rock may have been aimed at the conductor in anger, or in resentment for having been ejected from the car, and that consequently the car was not injured with malice against the owner, nor yet wilfully and wantonly, as alleged in the indictment. It is undoubtedly true that malicious mischief is not committed when the act alleged to be criminal is prompted by sudden resentment of an injury or supposed affront (*State v. Landreth,* 4 N. C., 331), nor is the act wilful and wanton when committed under like circumstances, that is, when it is not preconceived and done with reckless indifference to the rights of others, but is merely done impulsively under the influence of suddenly aroused passion. *State v. Brigman,* 94 N. C., 888. But the jury may have found, under proper instructions from the court, that the deliberate intention was to injure the car and not merely to attack the conductor, and that the act really possessed all the ingredients of a crime within the meaning of the statute and was not done in the heat of passion. It was for the jury to pass upon the evidence and to find the facts. We cannot presume error to have been committed by the court below. The presumption here is the other way. We must take it that His Honor charged the jury fully and correctly, and that the jury found all of the facts necessary to constitute the crime. If the defendant desired any special instruction upon this feature of the case, he should have asked for it. *Simmons v. Davenport,* 140 N. C., 407. There was some evidence to support the verdict, and if the jury decided contrary to its weight, the remedy of the defendant was an application to the judge to set the verdict aside. *Stewart v. Carpet Co.,* 138 N. C., 60.

The trial proceeded a little irregularly, it seems, in the

STATE *v.* MARTIN.

lower court, as the grand jury returned "not a true bill" as to one of the defendants, who was, nevertheless, put on trial. We do not perceive, though, how there has been any misjoinder, nor why the original defendants could not have jointly committed the offense, one doing the act and the other, as principal, aiding and abetting him, or participating with him. *State v. Stroud,* 95 N. C., 626; *State v. DeBoy,* 117 N. C., 702; 1 McClain Cr. Law, sec. 210. "The authorities agree that there are in misdemeanors no accessories either in name or in the order of the prosecution. When, therefore, one sustains in misdemeanor a relation which in a felony makes an accessory before the fact, if what he does is of sufficient magnitude, he is to be treated as a principal; the indictment charges him as such, and unless the pleader chooses to make the allegation in the accessorial form, as he may, it does not mention that the act was through another, and he may be proceeded against either in advance of the doer or afterward, or jointly with him." 1 Bish. Cr. Law (8 Ed.), sec. 685; 1 Wharton Cr. Law (9 Ed.), sec. 223. Nor do we see why the testimony, which was competent against both of the defendants, could not be used against this defendant, or how he has been prejudiced by its use, even though the indictment was returned "not true" as to Revels.

There was no error in the trial and it will be so certified.

No Error.