G. D. B. PRITCHARD, RECEIVER, v. PASQUOTANK AND NORTH RIVER STEAMBOAT COMPANY.

(Filed 15 September, 1915.)

**1. Deeds and Conveyances—Lands—Implied Warranty.**

In the absence of fraud or mistake in a conveyance of land, there is no implied covenant or warranty of title, either at law or in equity, and the grantee has no remedy on the ground of failure of title, unless a warranty is expressed in the deed or can reasonably be inferred from a fair construction thereof.

**2. Same—Wharves—Expressio Unius.**

When a conveyance of a steamboat line expressly covenants for a good title, or warrants the title only as to liens or encumbrances on steamers, it excludes the idea that the wharves, landings, etc., were intended to be included therein, upon the maxim, *Expressio unius est exclusio alterius.*

**3. Deeds and Conveyances—Wharves—Fixtures—Implied Warranty.**

Wharves, which are used in connection with a line of steamboats, and built upon the riparian lands, or banks of the stream, or annexed thereto, and manifestly intended to become a part thereof, will not be considered as personal property, so as to imply a warranty of the title in a conveyance of the steamboat line, as in sales of such property, although the vendee may not have acquired a fee-simple absolute therein, but only a base, qualified, or determinable fee.

**4. Same—Defective Title—Steamboats—Deposit of Liens—Contracts.**

Where a steamboat company conveys to another all of its property, including its boats, landings, wharves, etc., and deposits with a trustee a certain sum of money to discharge liens upon the steamers alone, without any stipulation that any part of the fund should be applied as compensation for defects in the title of the other property conveyed, the conveyance itself clearly forbids that any of the funds, so deposited, should be used for purposes not specified, or to compensate the purchaser for any defect in the title to one of the wharves conveyed.

APPEAL by defendant from *Justice, J.*, at the February Term, 1915, of PASQUOTANK.

This action was brought to recover of W. G. Gaither, Jr., trustee, six hundred and thirty-nine 86-100 dollars, it being the balance of two thousand dollars deposited with him by agreement of the LeRoy Steamboat Company and the defendant to pay off certain liens on two steamers, *Virginia* and *Haven Belle,* which were sold by the LeRoy Steamboat Company to the defendant. On 16 July, 1911, the LeRoy Steamboat Company, in consideration of $18,000, sold and delivered to the defendant the said two steamers, "together with all tackle, apparel, and furniture thereto belonging, and any and all wharves, docks, piers, and landings at Maud's and Newbern's Landings, Hall's Harbor, and Hog Quarter, N. C., and all contracts, rights and privileges it may have acquired from the Norfolk Southern Railroad Company for the operation of steamers and other vessels between Elizabeth City and Brinson's Landing and intermediate points, and also its good will, with a reservation of certain moneys accruing under said contract and the operation of the steamers prior to 16 July, 1911." There was a covenant against liens and encumbrances on the two steamers "arising on and after 12 December, 1910, and prior to 16 July, 1911," except an indebtedness of $8,333.33 to the Norfolk Southern Railroad Company, which the defendant was to assume and to receive credit for that amount on the purchase money, and the balance, $9,666.67, less $2,000 deposited with W. G. Gaither, Jr., was paid by defendant to the LeRoy Steamboat Company. The following is the stipulation between the LeRoy Steamboat Company and defendant, under which the deposit of $2,000 was made: "It is agreed that $2,000 of the purchase money of said steamers shall be deposited with some one, agreeable to both parties, to be held for thirty days for the payment of any liens other than those mentioned in section first ($8,333.33 indebtedness), on said two steamers, and which arose while said steamers were operated by the party of the first part (LeRoy Steamboat Company). At the expiration of thirty days from date, said $2,000, less such liens, if any, shall be paid to the party of the first part.

Plaintiff is receiver of the LeRoy Steamboat Company, and after paying to the plaintiff the sum of $1,000 and discharging the liens mentioned in the agreement to the amount of $360.14, he has in his hands the sum of $639.86, due to the plaintiff, unless the defendant is entitled thereto by reason of the claim asserted in its answer. This claim is based upon the allegation that the title to part of the real property which was sold, towit, the LeRoy wharf at Newbern's Landing, had failed and that J. H. LeRoy had duly recovered judgment in an action against defendant for the same, and defendant has been compelled to pay a large sum of money, exceeding $639.86 in damages and costs, in order to retain the said wharf. The defendant tendered the following issues:

1. Did the LeRoy Steamboat Company warrant the title to the LeRoy Wharf at Newbern's Landing, as alleged?

2. Did J. H. LeRoy recover the said wharf against the defendant, as alleged?

3. What damage did the defendant sustain thereby?

4. Did the title to the said wharf at Newbern's Landing absolutely fail, and was defendant ousted from its possession, as alleged?

5. What abatement in purchase price are defendants entitled to by reason of the same?

6. What credits are defendants entitled to by reason of liens paid?

The court refused to consider those issues, and, instead thereof, submitted the following issue to the jury:

"What amount, if anything, is due to the plaintiff of the $2,000 deposited with the defendant W. G. Gaither, Jr.?"

The jury answered $528.86. Judgment was entered in that amount in favor of the plaintiff, and the defendant excepted and appealed, assigning as errors the refusal to consider the issues tendered by it and the submission of the single issue as to the amount due to the plaintiffs.

*Aydlett & Simpson for plaintiff.*
*Ehringhaus & Small for defendant.*

WALKER, J., after stating the case: The contention of the defendant is, not that there was any express warranty as to the title of the "LeRoy Wharf at Newbern's Landing," but that the law implied a warranty of title, and as the defendant has lost that piece of the property conveyed to it by the LeRoy Steamboat Company, it should be compensated in damages and the money in the hands of the plaintiff should be applied to the payment of its claim, as defendant was legally—and if not, then equitably—entitled thereto. But the defendant's reasoning fails at its very inception. There was no covenant of warranty against the existence of liens or encumbrances as to any of the real property conveyed to it. Having omitted to have such a covenant inserted in the deed, the law will not imply one in its favor, but compel the defendant to abide by the terms of the contract as settled by the parties and expressed in their deed. "Covenants of title (in a sale of real property) are never implied. Consequently, in the absence of fraud or mistake, if a deed contains no covenant, all questions of title are at the risk of the grantee. If the title fail, he is without remedy, either at law or in equity, against the grantor." 11 Cyc., 1063, and cases in note 20. And so it is said in *Walsh v. Hall,* 66 N. C., at p. 237: "Where land has been sold and a deed of conveyance has been duly delivered, the contract becomes executed, and the parties are governed by its terms, and the purchaser's

only right of relief, either at law or in equity, for defects or encumbrances, depends, in the absence of fraud, solely upon the covenants in the deed which he has received. Rawle Covenants for Title, 459."

In *McKesson v. Hennessee,* 66 N. C., 473, it appeared that plaintiff in 1860 had purchased a tract of land from the defendant and taken a deed therefor in fee, but without any covenant of warranty or against liens or encumbrances. Defendant sued upon the note given by plaintiff for the purchase money and recovered judgment thereon, and plaintiff sought to enjoin him from enforcing it on the ground that the title had failed. Issues were submitted to the jury as to the state of the title and the damages if it was found to have been defective, but this Court held them to be irrelevant, as there was no covenant in the deed to protect the title, *Chief Justice Pearson* saying: "The complaint and answer both treat the deed of Nancy Hennessee to McKesson as a conveyance and not as an executory agreement to make title. It follows, there being no warranty or covenant of seizin, that the claim which the plaintiff seeks to set up has nothing to rest on. The legal effect of the deed was a quitclaim or release by way of extinguishment, and the finding of the jury was upon matter immaterial." It seems, therefore, to be settled now that at law, and even in equity, a vendee has no remedy on the ground of failure of title, if he has no covenants, and there is no fraud or mistake. *Chesterman v. Gardner,* 5 Johnson Ch. (N. Y.), 29; *Gouveneur v. Elmendorf, ibid.,* 79; *Snyder v. Laframboise,* 12 Am. Dec., 187, and note in Extra Annotated Edition at p. 191, citing *Dorsey v. Jackman,* 7 Am. Dec., 611; *Doyle v. Knapp,* 3 Scam., 334; *Owings v. Thompson, ibid.,* 505; *Slack v. McLagan,* 15 Ill., 242; *Sheldon v. Harding,* 44 Ill., 68, and other cases. See, also, *Maney v. Porter,* 3 Mumphreys (Tenn.), 346-363; *Botsford v. Wilson,* 75 Ill., 132. The Court said in *Sheldon v. Harding, supra:* "There can be no doubt that a quitclaim deed for land, without reference to the character of the title, is, in the absence of fraud, a sufficient consideration to support a contract; money paid for such a conveyance cannot be recovered back, or a plea of failure of consideration maintained to a note given for such a conveyance. Such deeds are made because the vendor is unwilling to warrant the title, and they are accepted because the grantee is willing to take the hazard of the title, and believes it is worth the price he pays or agrees to pay. And, unless fraud is practiced upon the grantee, the law permits such contracts to be made, and will uphold and enforce them. But where the vendee agrees to give a specific title he must do so whether there is fraud or not." It has been stated in some of the books that while no covenant of title will be implied from the mere fact of the conveyance of the land, one will be implied where it was evidently intended by the words of the instrument that it should be so, but this is but the usual inference permitted to be drawn from the language of

the parties, where their meaning is sufficiently certain and explicit to justify it. It is not a warranty implied by law from the conveyance. Besides, in this case, there is an express warranty or covenant as to liens or encumbrances on the steamers, excluding the idea that any warranty or covenant of other kind was intended as to the wharves, landings or other real property which was just as much subject to defects as the personal property. The deed, therefore, on its face and by its terms, as said in *Basnight v. Small,* 163 N. C., at p. 15, instead of strengthening the contention of defendant, refutes it, upon the familiar maxim, *"Expressio unius est exclusio alterius."*

The defendant contends, however, that the wharf at Newbern's Landing is personal property, and that there is always a warranty of title, though not of quality or soundness, implied in the sale of chattels; but we cannot agree that the first premise is correct. The wharf was built upon the land, or banks of the stream. The structure was permanently annexed to the land for the better enjoyment of the freehold and was manifestly intended to become a part thereof, although the vendee may not have an absolute fee-simple estate therein, but only a base, qualified, or determinable fee. The rule of the common law as stated by *Lord Ellenborough* in *Elwes v. Mawe,* 3 East, 38 (2 Smith's Leading Cases (9 Ed.), p. 1423), to determine what is a fixture as between vendor and vendee, is that "Whatever is affixed to the freehold becomes a part of it and passes with it," and he adds: "The rule is observed in its full vigor." Any accepted definition of a fixture, when applied to the admitted facts of this case, will lead us to the conclusion that this wharf is of that character, and passed as a part of the land to the vendee. It is in no legal sense personal property. *Pemberton v. King,* 13 N. C., 376; *Moore v. Valentine,* 77 N. C., 188; *Foote v. Gooch,* 96 N. C., 265; *Overman v. Sasser,* 107 N. C., 432; *Hopper v. Lutkins,* 4 N. J. Eq., 149; *S. v. Martin,* 141 N. C., 832, and especially *Basnight v. Small,* 163 N. C., 15, where it was held that a tramway consisting of rails fastened to cross-ties, which were laid on the ground, for the purpose of removing timber from the woods where it was cut, was a fixture, and so here, the wharves were built on the bank of the river and its bed, for the purpose of improving the landings and aiding in the carriage of articles of commerce from one landing to another. The analogy between the two cases is perfect. *Hopper v. Lutkins, supra,* which also clearly illustrates the doctrine, was a case where the purchaser of a mill-seat and water-power accepted his vendor's deed without any covenant for his protection, as to the height of the dam or the extent of the flow to which he is entitled, and afterwards was subjected to damages by reason of the improper height of the dam, and though this was a defect in his title to the full and free use of the water, the Court held that, without a showing of fraud or mistake, he was without any remedy against his

vendor, either in law, or even in equity, to enjoin a recovery on the note given for the purchase money.

In any admissible view of the facts, so far as considered, the ruling and judgment of the court were correct, but we may also go further and state, that the money was deposited with Gaither to discharge liens on the steamers alone, and not any on the land, nor is there any stipulation that any part of the fund should be applied to compensate defendant for any defect in the title to the other property conveyed. So that, apart from the above considerations, it would seem that defendant meets with an insuperable difficulty in the fact that such an application of the fund as it seeks to have made is not authorized by the agreement of the parties made, which we are not at liberty to alter. The purchase money on the "wharves, docks, piers, and landings," by clear inference, was paid over to the LeRoy Steamboat Company at the time the sale was consummated, and only $2,000 of that part applicable to the steamers was retained and deposited to pay off any liens upon them.

We affirm the judgment, as there is no error discoverable in the record.

No error.