W. T. BROWN v. NORTH CAROLINA JOINT STOCK LAND BANK
OF DURHAM.

(Filed 25 May, 1938.)

1. **Mortgages § 10—**

   Fixtures annexed by the mortgagor after execution of the mortgage become a part of the security and are subject to the mortgage, but unfixed chattels do not become a part of the realty, and ordinarily the mortgagor is entitled to remove them upon foreclosure.

2. **Fixtures § 1—Determination of whether chattels are affixed to the realty.**

   In determining whether chattels are affixed to the realty, the determining factor is whether the chattels are annexed to the realty so that they have a permanent and fixed position, the manner of annexation not being

controlling, even the weight of the chattel alone being sufficient, and the intent with which the annexation is made is relevant to the question.

**3. Mortgages § 42—Evidence that chattels had not been affixed to realty held for jury in mortgagor's action to recover same after foreclosure.**

The trustor placed certain chattels on the land after the execution of the mortgage. Foreclosure was had, and defendant *cestui que trust* purchased the property at the sale and took possession, and trustor instituted this action against the *cestui* to recover possession of the chattels or damages for their detention if delivery could not be had. Trustor introduced evidence that some of the chattels were tools and articles of personalty unattached to the freehold, and that the other chattels were a sawmill and shingle mill which were portable in character and which he took from place to place in using them, that they were not affixed and could be removed without injury to the land. *Held:* Plaintiff's evidence, if found to be true, establishes that the tools were unfixed chattels, and the evidence is for the jury on the question of whether the sawmill and shingle mill were fixtures, and the granting of defendant's motion to nonsuit constitutes error.

APPEAL by plaintiff from *Phillips, J.,* at February Term, 1938, of MOORE.

Civil action to recover possession of personal property allegedly wrongfully withheld, and if property cannot be delivered, then for damage.

Plaintiff alleges that he executed and delivered to defendant a mortgage deed or deed of trust on land in Moore County, North Carolina; that, pursuant to foreclosure defendant went into possession of said land in June, 1936; that at that time plaintiff owned the following personal property located in the mill building on said land, to wit: One corn mill complete, one wheat mill complete, cog wheels, tools, a sawmill and a shingle mill, of the reasonable value of $2,000; that defendant had no right, title or interest in said personal property; that practically all of it was purchased by the plaintiff subsequent to the giving of the mortgage or deed of trust; that though plaintiff has demanded of defendant and its agents the return to him of said personal property, it and they have refused to do so, and that defendant has converted same to its own use and wrongfully retains same.

Defendant denied that the property is wrongfully withheld and avers the same consisted of fixtures which were covered by the deed of trust; that the title and ownership thereof vested in defendant upon purchasing the land at the foreclosure sale under the deed of trust on 22 September, 1934, and by deed executed pursuant thereto by Interstate Trustee Corporation, trustee, dated 4 November, 1934, irrespective of whether same was purchased by plaintiff before or after the deed of trust was executed.

On the trial below, plaintiff testified in part: "I had a mill building and other property, on this property at the time they went into posses-

sion of it. . . . There was a lock on the premises when I went away. . . . They were operating the machinery when I went back. . . . I had a corn mill outfit, wheat mill outfit, and a set of chairs, turning lathes and a lot of other tools. I had a sawmill, shingle mill and swing saw edge. This property was placed down there. They were in running position so I could run them, not attached to the building. I had some blacksmith tools, wrenches, steel drum, pump, oil drum, chair tools, lathes and such like as that. Part was in there at the time I executed a mortgage to Joint Stock Land Bank and part was not. I never did give the Joint Stock Land Bank any chattel mortgage on personal property. The sawmill was a portable mill. I had saws or wheels there not connected with the building. The mill wheel was not connected with the building. It was set up on platform. . . . I operated the shingle mill at other places and it was brought back in there and sitting loose and had been operated at other places and was sitting in loose under the shed. . . . I had a couple of shingle saws setting in the loft. None of the tools were connected with or tied down to this house, such as hammers, wrenches and tools that belonged to the blacksmith shop. These tools were taken away from the blacksmith shop and happened to be in the house when this property was taken over. The sawmill was a portable mill moved in there from the woods. It was not made a part of the shop or a part of anything there at the mill. It could be run by power other than water power. It could be moved without tearing down the mill. The sawmill was there when the mortgage was given but the shingle mill was not there. . . . The shingle mill was portable. It was just put in there, and set down on some blocks and saw a while and carried to the woods and saw a while. When it was in the woods it was operated by steam. . . The shingle mill was put there since this loan. . . . I use the grain mill, the flour mill, sawmill and shingle mill for the purpose of manufacturing lumber, shingles and flour for the public."

The witness Edgar Brown, in part: "Neither the shingle mill nor sawmill was bolted to the building in any way. Portable sawmills are fastened by just driving some little wedges. . . . I have seen several things that look like cogwheels, tools and other appliances sitting around in this mill house loose. . . . The sawmill is just a portable mill like you put up and saw wood; just move them about and do two or three hours sawing in one place. . . . The sawmill wasn't in the building; it was on the outside. The shingle mill was also on the outside when I saw it. I know of my own knowledge that he had moved the shingle mill from place to place and let other people use it, and the same thing with the sawmill."

The witness S. L. Brown testified in part: "I know that the shingle mill has been moved out from under there (the shed) and operated at

---

---

other places. . . . The sawmill and shingle mill are not fastened down or bolted in any way and *is* just sitting *unkeyed.* Whenever you worked it you would have to set it up the same way, and you would have to fasten it, of course, to keep it from moving around."

From judgment as of nonsuit, entered at the close of plaintiff's evidence, plaintiff appealed to the Supreme Court and assigned error.

*Seawell & Seawell for plaintiff, appellant.*
*J. S. Patterson and W. D. Sabiston, Jr., for defendant, appellee.*

WINBORNE, J. Counsel for plaintiff, in brief filed here, state that plaintiff will not contend for the wheat mill and the corn mill, which were located in the mill building at the time of the foreclosure. This question then arises: Are the sawmill, shingle mill, cogwheels and tools so annexed to the land as to be fixtures, or do they retain the status of personal property?

The evidence presented on this appeal with relation thereto raises an issue of fact which should have been submitted to the jury under appropriate instructions.

In the relationship between mortgagor and mortgagee the principle of law applicable to fixtures is well settled. In *Moore v. Vallentine,* 77 N. C., 188, *Pearson, C. J.,* said: "When a mortgagor who is allowed to retain possession . . . makes improvements and erects fixtures, he does so for the purpose of enhancing the value of the property, and having made *this addition to the land,* he is not at liberty to subtract it."

In *Foote v. Gooch,* 96 N. C., 265, 1 S. E., 525, *Smith, C. J.,* said: "A mortgagor left in possession and use, who improves the premises by the erection of new works, and the introduction of new machinery, as a means of enlarging his operations, and intended to be a permanent annexation to the freehold, is not at liberty to impair the increased security provided for his debt by removing them. . . ." *Overman v. Sasser,* 107 N. C., 432, 12 S. E., 64; *Belvin v. Paper Co.,* 123 N. C., 138, 31 S. E., 655; *Pritchard v. Steamboat Co.,* 169 N. C., 457, 86 S. E., 171; *Springs v. Refining Co.,* 205 N. C., 444, 171 S. E., 635.

Fixtures annexed by the mortgagor of land after execution of the mortgage are subject thereto. 26 C. S., 728. *Foote v. Gooch, supra.*

In *S. v. Martin,* 141 N. C., 832, 53 S. E., 874, *Walker, J.,* speaking to the method of changing property, personal in its nature, into realty, said: "There must be some kind of physical annexation of the thing to the land, though the nature and strength of the union is not material, if, in fact, it be annexed. The annexation is in some cases by gravitation alone, or, in other words, the thing is kept in position by its own weight, as in the case of the planks laid down as the upper floor of a gin house and used to spread cotton seed upon, though not nailed or

otherwise fastened to the building. . . . They have, as it were, a permanent and fixed position, and are in a certain sense stationary—not movable, so as to be in one place today and in another tomorrow. 'The very idea of a fixture,' says the Court, in *Beardsley v. Ontario Bank,* 31 Barbour, at p. 630, 'is of a thing fixed or attached to something as a permanent appendage, and implies firmness in position.'"

In *Foote v. Gooch, supra,* it is stated: "The intent with which the annexation is made, enters largely into the question of permanency and the right to remove. . . . The test then is the actual attaching or affixing the articles of personalty to the freehold so that they become parcel of the realty. . . ."

There is evidence in the present case tending to show that when the defendant purchased the land under foreclosure, tools, cogwheels and other articles of personal property unconnected with and unattached to fixtures or to the freehold were in the mill building. If this be true, it is elementary that such articles are personal property.

There is evidence tending to show that the sawmill and shingle mill are portable in character and are not affixed or attached to the realty in the sense of permanency, but in their operations are removed from place to place. If this view be accepted by the jury, then under settled principles of law, the sawmill and shingle mill are personal property. Otherwise they are fixtures.

The judgment of nonsuit below is
Reversed.